## Martin D. Irwin *v.* Lorenz Nolde, Moses Miller, Samuel R. Hess, Administrator of Lorenz Nolde, deceased, Appellants.

*Trespass—Crops—Measure of damages.*

Generally in estimating damages for trespass where no intentional wrong has been done, the value of the thing taken or destroyed is to be estimated as of the time of the illegal act. This rule applies to the destruction or removal of crops, and in estimating the damages the actual value at the time of the trespass is to be taken.

*Measure of damages—Lease—Rental value.*

Where a tenant has been deprived of the use of a part of the farm leased, but without willful negligence or wrong, the measure of damages is not the rental value of the fields taken, but the injury to the whole.

The loss of a single field by disarranging the operations of the farm as

a whole may cause an injury much greater than the rental value of the acres taken. The real loss is the value of the use of the part taken in connection with that which remains, and it is measured by the difference in rental value. This measure is reasonably free of uncertainty, and is easy of ascertainment and of general application. Per FELL, J.

*Trespass—Injury to part of leasehold—Measure of damages—Charge of court—Verdict.*

In an action of trespass for forcibly putting the plaintiff out of possession of two fields of a farm of forty acres which he had rented of a society of which the defendant was trustee, it appeared that the plaintiff had planted one of the fields with corn, and had partly prepared the other field for a crop of corn and tobacco. He remained in undisturbed possession of the balance of the farm. Defendant was not guilty of a malicious or wanton trespass. The crops had been harvested and their value ascertained before the trial. No evidence of the diminution of the rental value of the farm as a whole was offered, and the court was not asked to instruct the jury that the measure of damages was the diminution in the rental value of the leasehold. The court gave a general instruction limiting the recovery to compensation for the loss sustained. The verdict of the jury was reasonable in amount. *Held*, that the judgment for the plaintiff should be sustained without sending the case back for retrial.

Argued May 18, 1896. Appeal, No. 154, July T., 1895, by defendants, from judgment of C. P. Lancaster Co., June T., 1880, No. 24, on verdict for plaintiff. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass for interfering with plaintiff's leasehold.

The facts appear by the charge of the court below, which was as follows:

This is a suit in trespass brought by Martin D. Irwin, the plaintiff, who, it appears, was the tenant of a certain fifty acre farm belonging to the Seventh Day Baptists of Ephrata, located in Ephrata township, in this county.

It appears that on the 25th day of February, 1878, Adam F. Madlem and J. J. R. Zerfass, who were the trustees of this incorporation or association, leased these premises in writing to Martin D. Irwin, the plaintiff, for the term of one year, from April 1, 1878, to April 1, 1879, upon the following terms, among others : " The said Martin Irwin, Jr., is to farm upon the usual terms of one-half of all grain that said farm produces, and shall furnish one-half of all seeds necessary, and put out in good

season and proper condition, and deliver Society's grain half to mill." . . . .

Mr. Irwin farmed this farm for one year; at the end of the year he held over, or leased the farm for another year, which brings us to April 1, 1880. On December 17, 1879, the same trustees, Adam F. Madlem and J. J. R. Zerfass, entered upon a contract for a continuation of the lease, which was signed by them as well as by Irwin. The following is the continuation of the lease :

"EPHRATA, Dec. 17, 1879.

" The parties to the within agreement have agreed to continue the lease for one year longer on the same terms. Irwin is to have one acre of tobacco in exchange corn."

[Now it is undisputed that on May 10, 1880, following, the defendant in this suit, Lorenz Nolde, entered upon one of the fields—I think it was the five acre field—and dispossessed Mr. Irwin from that field. On May 24th he was dispossessed by the same party from the field containing seven acres. The first field had been planted in corn when he was dispossessed; part of the seven acres had been planted, and part of it was not planted here. The seven acre field had been plowed, a part of it, or nearly all of it—say one half of it—and one acre manured. That was the situation at the time Nolde entered upon these premises and dispossessed Irwin of the two fields he had leased from the Seventh Day Baptists of Ephrata.] [1]

It appears that this corn on the five acre field was raised to maturity, and was harvested and kept by Mr. Nolde, who represented that he was acting as the legal trustee of this church or association. It appears also further that the seven acre field was planted with corn, and was raised, harvested and gathered in by Nolde, as the trustee of this church.

Now it becomes my duty to instruct you as a matter of law, if Mr. Nolde was a trespasser at the times he entered upon these premises, on the 10th day of May and on the 24th day of May, 1880, and continued on holding possession of the premises, and raising and gathering the crops, he would be a trespasser continuously up to the time the crops were harvested.

[We shall also say to you as a matter of law, that the plaintiff, Irwin, was the tenant for the year 1880 under a writing given by A. F. Madlem and J. J. R. Zerfass, as trustees of this

association, and, therefore, neither Mr. Nolde nor anybody else had a right to dispossess him.    He had possession of the premises under this written lease from the association.] [2]

[We shall also say to you and hold here that, if he was dispossessed,—and there seems to be no question as to the dispossession as to these two fields,—he would be entitled to the actual damages sustained by him by reason of such dispossession, and that the measure of damages would be the value of the crops raised upon those two fields during the time of the dispossession, that is, from the time they were planted—no matter by whom they were planted—up to the time they were harvested. [3]

[We shall also say to you as a matter of law, that as to the one acre of tobacco, which he was entitled to have, and which was plowed and manured and ready to be planted, that the tenant would be entitled to the rental value of that acre, the value for that year, whatever that has been shown to have been worth. He would not be entitled to any speculative damages for it, but he would be entitled to the rental value of that one acre, whatever that would be.] [4]

[It is not necessary for me to say anything more in my general charge to you with reference to any other matters, except with reference to the testimony that has been offered here to show that there had been a settlement of this suit by the parties. There has been some testimony offered here, produced before you, from which the counsel for the defendants would have you infer that there was a settlement of this case.    You heard what that conversation was between Mr. Nolde and Mr. Irwin.    It seems at the time the conversation was had the criminal court was in session here; that two cases had been returned by the grand jury, one for assault and battery and one for forcible entry and detainer.    They were criminal suits, and had nothing whatever to do with this civil suit.    The parties had met, it seems, with the counsel.    Samuel H. Reynolds was one of the counsel in this case at that time, and the witnesses were also present at that criminal trial and heard a conversation between Mr. Nolde and Mr. Irwin, in which one of them said : " All these cases are now settled, and you can go home."    Now did Mr. Nolde and Mr. Irwin mean that the settlement included this civil case ? He did not say so.    " All these cases are now settled, and you

can go home." Could you put any other construction upon it than that he meant all these criminal cases, because they only were under consideration at that time? You can infer that he meant cases outside of those cases that were then going on. It is my duty to leave this matter to you as a question of fact; but I have a right to give you my opinion. My opinion is, that it had nothing to do with this civil case. But you can have a different opinion upon it, if you think so. I shall leave it as a question of fact for you. If you think at the time these criminal cases were being tried and the witnesses were sent home, that the expression made there by Mr. Nolde in the hearing of Mr. Irwin, "Now, all these cases are settled," and Mr. Irwin said, "Yes, but not to my liking," was meant by both Irwin and Nolde to apply to his case, there can be no recovery here; but if it applied to the criminal cases only, it had nothing to do with this case, if it did not refer to this case. If it did refer to this case as a settlement, it is singular that the learned counsel did not go to the prothonotary's office, pay the costs and release it. That was the usual way of doing the business.

It is true as a general proposition that where a party becomes a trespasser upon the land of a tenant, he will be liable for the whole damage sustained, that is, for all the crops taken, the crops that would be turned over to the landlord as well as to the tenant. But this case is different from ordinary cases. This man Nolde claimed himself to be a trustee, and there was a dispute about the trusteeship for a number of years, and, therefore, Mr. Nolde may have thought he was doing right when he entered upon this field and ousted this tenant; and, therefore, in this case it would not be right for you to give more damages than one half of the value of the crops. It is presumed that the crops that were taken off by Mr. Nolde were turned over to the society by him as a de facto trustee, and, therefore, if you find Mr. Nolde was a trespasser, then you would be warranted in giving the plaintiff a verdict for the full amount of one half of the value of the crops, and you have the right to take into consideration and add the interest on that amount from the time the crops were harvested, as part of the damages; but you must put that in your verdict as a whole, as a lump sum, and say, we find for the plaintiff so much—whatever it would be.] [5]

The learned counsel for the plaintiff claim that he would be

entitled to exemplary damages in this case, or vindictive or punitive damages; that is, damages to punish the defendants for going on the premises and throwing the plaintiff out. That would be the rule where the person doing it is a stranger; but there is a claim here that Nolde thought he was a trustee, as was shown by the litigation that was carried on and continued here for a number of years. Therefore, we will say to you you have no right to give any vindictive, exemplary or punitive damages in this case, that you are confined to the actual loss, which is the value of the crops that were taken away, thus preventing him from harvesting and selling them.

Defendant's points and answers were as follows:

2. The jury must confine their inquiry to actual losses at the time the alleged trespasses took place, to wit: May 10 and 24, 1880. They cannot take into account the condition or value of the crop raised by Moses Miller in the fall of 1880 when it was matured. *Answer:* That point we refuse; because if a trespasser comes upon your land and raises any crop upon it, you are entitled to the benefit of that crop. That is common sense. Whatever that crop is, you are entitled to it. If Mr. Nolde was a trespasser, and did take possession of this five acre field, and planted, raised and cultivated corn in it, and planted corn in the other, the seven acre field, and harvested it, Mr. Irwin is entitled to it. [13]

4. The way to ascertain the damages, provided the plaintiff is entitled to any, so far as the crop of corn on the five acre field is concerned, is the value of the crop at the time the alleged trespass took place; that is, what the crop of corn would have sold for at a fair public sale May 10 or May 24, 1880. *Answer:* That point we refuse; because, if the defendant was a trespasser, and held on to the premises, harvested and gathered the crops, the tenant would be entitled to their value as damages during that time. [14]

5. The jury is further instructed that the way to ascertain the damages, if any, touching the seven acre field, is the rental value for the year, to wit, from May 10 or May 24, 1880, or when the alleged trespass took place, including a fair compensation for so much of the field as he had plowed. *Answer:* That point we refuse. We have already told you what the proper measure of damages would be. [15]

6. If the plaintiff, Irwin, failed to carry out any of the material conditions of the lease, to which he had agreed by the terms of the letting, the defendant is not only entitled to a fair deduction for what he had suffered by reason thereof, but Nolde, as de facto trustee, acting for himself and his associates, had the right to consider the lease at an end and dispossess the plaintiff, using no more force than what was required to accomplish that end. *Answer :* That point we refuse. [16]

9. If Nolde and his cotrustees, Madlem and Spangler, were the de facto trustees of the " Seventh Day Baptists of Ephrata," they had the right to the letting of the farm in question, and as such, were not bound to recognize the alleged reletting by Zerfass and A. F. Madlem, and if the de facto trustees served a notice to quit on Irwin, and Irwin held over, then he became a tenant at will or sufferance, and the de facto trustees, Nolde, Spangler and William Madlem, could eject Irwin, using no more service than was necessary for that purpose. *Answer :* That point is refused, because the society had continued this lease for one year longer in writing, and Irwin was holding this property as the tenant for that year. [17]

Verdict and judgment for plaintiff for $525. Defendants appealed.

*Errors assigned* among others were (1–5, 13–17) above instructions, quoting them.

*W. D. Weaver* and *W. R. Wilson*, for appellants.—A farmer cannot generally recover damages for the loss of profits he expected from a crop destroyed before maturity. The value of the matured crop is too uncertain: Sedgwick on Damages, sec. 191, ed. 1891; Giles v. O'Toole, 4 Barb. 261; Hoy v. Gronoble, 34 Pa. 9.

The court erred in instructing the jury that they might allow interest in their general verdict: Richards v. Citizens Nat. Gas. Co., 130 Pa. 37.

*T. B. Holahan* and *H. M. North*, with them *E. K. Martin*, for appellee.—The difference in value between the original price of the thing injured, and its value enhanced by circumstances, although this in one sense is profits, is undoubtedly allowable,

and easily to be ascertained. This is but making the injured party whole: McKnight v. Ratcliff, 44 Pa. 156; Hoy v. Gro noble, 34 Pa. 9 ; Douty v. Bird, 60 Pa. 48.

OPINION BY MR. JUSTICE FELL, July 15, 1896 :

This action grows out of a difficulty which originated sixteen years ago between two sets of trustees claiming control of the property of a religious society. The controversy resulted in a number of suits in the civil and criminal courts of the county, and this is the fifth appeal arising from it which has reached this court. It is time it was ended. The action was in trespass for forcibly putting the plaintiff out of possession of two fields of a farm of forty acres which he had rented of the society. The plaintiff had planted one of the fields with corn and had partly prepared the other field for a crop of corn and tobacco. He remained in undisturbed possession of the balance of the farm.

The only assignments which need be considered relate to the measure of damages. The defendant at the time of the alleged trespass had been elected a trustee of the society and was acting as such. His title to the office was subsequently confirmed by the court of common pleas, but the decree was reversed on appeal. In taking possession of the fields he was acting under a claim of right, and was not guilty of a malicious or wanton trespass ; and the extent of his liability was to make just compensation for the injury done the plaintiff. The learned judge so instructed the jury, but the difficulty was in determining the proper measure of compensation. The plaintiff claimed the full value of the crops which the defendant raised on the fields. The defendant contended that as to the field in which corn had been planted a few days before he took possession he was liable only for the value of the crop at the time of the trespass, and that the rental value of the acres taken was the measure of damages for the taking of the field in which no crop had been planted.

Generally in estimating damages where no intentional wrong has been done, the value of the thing taken or destroyed is to be estimated as of the time of the illegal act. This rule applies to the destruction or removal of crops, and in estimating the value the actual value at the time of the trespass is to be taken. The

conflict in the decisions where the property taken has been increased in value by the defendant, and the plaintiff claims the benefit of the increase without any allowance for the labor expended, is due to some extent to the technical rules applicable to the actions of trover, replevin and trespass. In Sedgwick on Damages, sec. 503, it is said : "But by the prevailing view the defendant, if he acted in good faith, is allowed the value of his labor ; that is, the measure of damages is the value of the property as it was just before the defendant's wrongdoing began." Forsyth v. Wells, 41 Pa. 291, is cited as the leading case upon the subject. In the opinion in that case the Chief Justice said : "Where the defendant's conduct, measured by the standard of ordinary morality and care, which is the standard of the law, is not chargeable with fraud, violence or wilful negligence or wrong, the value of the property taken and converted is the measure of just compensation. If raw material has, after appropriation and without such wrong, been changed by manufacture into a new species of property, as grain into whisky, grapes into wine, fur into hats, hides into leather or trees into lumber, the law either refuses the action of trover for the new article or limits the recovery to the value of the original article."

This action was in trespass for ousting the plaintiff of his possession of a part of a farm which he held as a tenant from year to year. The trespass which resulted in an ouster was but a single trespass, and until another entry had been made by the plaintiff he could recover for the single trespass only : Sedgwick on Damages, sec. 924. The damage was not to his crop, but to his leasehold, and it should be measured by the diminution in rental value. It should not be measured by the rental value of the fields taken, but by the injury to the whole. The loss of a single field by disarranging the operations of a farm as a whole may cause an injury much greater than the rental value of the acres taken. The real loss is the value of the use of the part taken in connection with that which remains, and it is measured by the difference in rental value. This measure is reasonably free of uncertainty, it is easy of ascertainment and of general application.

The learned judge was not asked to instruct the jury to apply this rule, and no evidence of the diminution of rental value was

offered.   The instruction on the measure of damages asked by the defendant could not have been given, and in the absence of any evidence applicable to the correct rule for the ascertainment of damages we do not consider it our duty to send the case back.   The crops had been harvested and their value ascertained before the trial, and this value was a guide, if not the best, the best which the evidence furnished, for the jury.   The general instruction on the subject, limiting the recovery to compensation for the loss sustained, was correct and full, and substantial justice seems to have been reached by the finding of the jury.   While not approving all that was said as to the measure of damages, we have with some hesitation decided to allow the judgment to stand, and it is accordingly affirmed.