### In re ST. LOUIS & KANSAS OIL & GAS CO.

(District Court, D. Kansas, Third Division. June 25, 1908.)

**1. JUDGMENT (§ 736*)—RES JUDICATA—MATTERS DETERMINED.**

Where a fund in controversy was produced by the operation of certain oil wells, after the commencement of an action in the state court to forfeit a lease of the wells, and the right to such fund was neither presented to nor determined by the state court on the trial of such action, a judgment in favor of the lessors therein was not a conclusive determination that they were entitled to the fund.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1264; Dec. Dig. § 736.*]

**2. JUDGMENT (§ 538*)—TIME OF TAKING EFFECT.**

A determination canceling an oil lease related back to the commencement of the action, and was a final determination of the rights of all the parties in interest with reference to the property as of that date.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 985; Dec. Dig. § 538.*]

**3. BANKRUPTCY (§ 139*)—TRUSTEE—OCCUPATION OF PROPERTY.**

Where, pending a suit to cancel an oil lease, the lessee's trustee in bankruptcy was directed to enter and continue the operation of the wells, it being thereafter determined that the lessors were entitled to cancellation, the trustee's possession pendente lite was that of a trespasser under a claim of title.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 139.*]

**4. BANKRUPTCY (§ 140*)—DAMAGES—OIL TAKEN FROM LAND.**

Where the trustee of a bankrupt lessee of oil land entered in good faith under a claim of title, pending suit by the lessors to cancel the lease in which they were subsequently successful, and operated the wells until the termination of the suit, paying to the lessors the royalty stipulated for in the lease, there being no other evidence as to the reasonable value of the oil in place in the ground, such royalty would be taken to be the reason-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

able value thereof, and hence, no damage being done to the land aside from the extraction of the oil during the trustee's operation of the wells, the lessors were not entitled to the fund produced by the oil, but such fund, after payment of the royalties, belonged to the trustee for distribution.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.*]

In Bankruptcy. Application for funds in the hands of the trustee.

Lapham & Brewster and Geo. A. Amos, for trustee.

Keene & Gates, J. B. F. Cates, and Keplinger & Trickett, for G. W. Squires and others.

POLLOCK, District Judge. The facts arising on this application, briefly stated, are as follows:

During the early part of March, 1904, and for several months thereafter, there were several cases pending in the state court against the St. Louis & Kansas Oil & Gas Company, lessees, and G. W. Squires et al., lessors, of certain oil and gas lands. That during September, 1904, the lessors of these lands filed their answer and cross-petition in one of these actions, praying for a cancellation of the lease between themselves and the St. Louis & Kansas Oil & Gas Company, for an injunction against operating under the lease, and for the appointment of a receiver, and for damages. This cross-petition was resisted by the lessee. It appears that under the order of the state court one of the officers of the lessee company was placed in charge of the plant upon the leased land, and was to operate it and hold the funds subject to the further order of the court.

On the 26th day of May, 1905, the St. Louis & Kansas Oil & Gas Company, pursuant to a petition in bankruptcy filed against it in this court, was adjudged a bankrupt. On the 27th day of July, J. H. Armel was duly elected and qualified as trustee of said bankrupt, and he thereafter on the 9th day of October, 1905, intervened on behalf of the bankrupt corporation, in the suit brought in the state court by G. W. Squires et al., upon their cross-petition for a forfeiture of the lease. It appears that from about the time the proceeding in bankruptcy was instituted, and until a short time after the trustee intervened in the suit in the state court, no one was operating the leased premises. During the latter part of October, pursuant to a recommendation in his report, the trustee was ordered by the referee in bankruptcy to take charge of the oil wells and operate them for the production of oil, and that he at once began their operation, and continued to operate the plant at a profit until the suit for a cancellation of the lease was prosecuted to a final judgment in the state court, at which time he promptly surrendered the possession of the leased premises to the owner. The trustee operated the plant for a period of nearly two years. The owners of the plant during all this time accepted the product which had been transferred into the pipe line without protest or objection. It appears from the evidence and from the pleadings that the operation by the trustee was beneficial to the lessors, and to all parties, and preserved the premises from deterioration, and that the lessors were glad to have the plant operated during the pendency of the litigation in the state court.

The referee denied the application of the owners of the land and awarded the fund in controversy, now in possession of this court, arising from the operation of the wells by the trustee, to the trustee for distribution to the creditors of the bankrupt estate. This was done by the trustee on the theory of res adjudicata, by the decisions of the state court, and on the further theory that applicants, the owners of the real estate, are estopped by reason of their acceptance of the royalties stipulated in the lease, without protest, from the trustee, during his possession and operation of the wells. I find nothing substantial in the argument of res adjudicata for the reason the fund in controversy was produced after the commencement of the action in the state court, and the right to such fund was neither presented to nor determined by that court on the trial of the issue there joined.

As to the argument made based on estoppel, I do not find it stands to reason because the owners of the land were entitled to the royalties paid by the trustee, regardless of any decision which might thereafter be made by the state court, and as possession of their land was taken by the trustee acting under orders from this court, in preservation of the rights of the bankrupt claimed under the lease then in litigation, and for the protection of all parties in interest in such property, they were powerless to dispute with the trustee.

The application must therefore be considered and determined on its merits from the proofs adduced, and, so considered, it must be conceded the decree of the state court canceling and annulling the lease relates back to the commencement of that action is a determination of the rights of the parties at that time, and is a final and conclusive determination of the rights of all parties in interest as of that date. Therefore it must now be held the owners of the land, applicants herein, were entitled to the possession of the premises freed from any claim under the lease from that date. Hence the trustee must be now regarded as having entered upon the premises, and produced the oil from which the proceeds in controversy flowed, as a trespasser under claim of title or right thereto. This is the claim asserted and most favorable to applicants. So considered, what are the rights of the parties in this fund?

As the proofs show, the trustee was in possession, claiming as the successor of the bankrupt corporation under the lease. The trustee at all times acted in good faith, and was guilty of no intentional wrong. No actual damage was done to the property of the applicants. In fact, it was benefited by the operation. No testimony has been taken for the purpose of showing the value of the oil in the ground. It is conceded applicants were paid an amount equivalent to the royalty usually paid to lessors by lessees of oil territory in that section of the country, and that the royalty was one-sixth of the oil produced, transferred to the pipe line.

In the absence of other proofs, and, as has been seen, none are found in this record, the royalty stipulated for in the lease must be taken as the reasonable value of the oil in place in the ground. The owners of the land expended no money and did no act toward its production; therefore they parted with nothing more than the reasonable value of the mineral oil in place in their property. Judge Sanborn, de-

livering the opinion of the Circuit Court of Appeals for this Circuit in Durant Min. Co. v. Percy Consol. Min. Co., 93 Fed. 166, 35 C. C. A. 252, said:

"One who unintentionally, and in the honest belief that he is lawfully exercising a right which he has, enters upon the property of another and removes his ore, his timber, or any other valuable appurtenant to his real estate, is liable in damages for the value of the ore, timber, or other thing in its original place, and for no more."

In Forsyth v. Wells, 41 Pa. 291, 80 Am. Dec. 617, it is said:

"Where there is a wrongful purpose or a wrongful negligence in the defendant, compensation for the real injury done is the purpose of all remedies, and so long as we bear this in mind we shall have but little difficulty in managing the form of action so as to secure fair results. If the defendant in this case was guilty of no intentional wrong, he ought not to have been charged with the value of the coal after he had been at the expense of mining it; but only with its value in place, and with such other damage to the land as his mining may have caused. Such would manifestly be the measure in trespass for mesne profits."

In the case at bar no damage was done to the land aside from the extraction of the oil which formed a part thereof. In fact, the real estate of applicants was benefited by the operation of the wells. The only question therefore presented here for review is: Who is entitled to the fund produced by the oil drawn from its place in the land in question?

The applicants have been paid the fair, reasonable value, under all the proofs in this case, of the oil in place. The remainder of the proceeds therefore belong to the trustee who produced them under the order of this court.

The decision of the referee must be sustained.

It is so ordered.