## UNITED STATES v. TELLER.

### (Circuit Court of Appeals, Eighth Circuit. January 28, 1901.)

### No. 1,439.

1. PUBLIC LANDS—UNLAWFUL CUTTING OF TIMBER—CONSTRUCTION OF RELEASE.

Defendant cut a large number of railroad ties upon unsurveyed public lands of the United States without authority, but, as he claimed, under a mistake. He was notified to stop cutting, and that the government claimed the ties so cut. After some negotiation he received a dispatch from the land department, which he construed as authority to continue cutting, and did so for a few days, until he learned that such authority had not been given. He thereafter entered into a contract with a special agent of the department which recited that he had in his possession certain ties claimed by the United States and certain others the ownership of which was being investigated by the agent, and by which the agent released all claim of the government to such ties and defendant agreed to pay the value of such as should be determined on investigation to have been unlawfully cut. *Held*, that such contract must be construed as applying to all ties then in defendant's possession, whether cut prior to the notice of claim or afterwards, and precluded the United States from subsequently claiming the ownership of any of the same.

2. SAME—MEASURE OF DAMAGES—EVIDENCE OF GOOD FAITH.

The uncontradicted testimony of a defendant that, after being notified that land on which he was cutting railroad ties was unsurveyed public land and to cease work thereon, he received a dispatch from the land department which he construed as permitting him to proceed is sufficient to warrant the submission to the jury of the question of his good faith, and to authorize an instruction that if he was a willful trespasser in cutting thereafter the measure of damages would be the value of the ties, without deduction for his labor, but if an unintentional trespasser the measure would be the value of the ties as they stood in the tree.

In Error to the Circuit Court of the United States for the District of Wyoming.

This was an action in replevin, brought by the plaintiff in error against the defendant in error to secure possession of 47,000 ties alleged to have been cut by the defendant without authority from unsurveyed public lands. The marshal returned that he executed the order of delivery made in the case by taking possession of 47,000 ties, located on the bank of the North Platte river at or near the mouths of Mullen and French creeks, in Carbon county, in the state of Wyoming. The record shows that of the 47,000 ties replevied about 3,000 were cut from defendant's own lands, leaving about 44,000 ties really in dispute. These undoubtedly were cut from unsurveyed public lands, and were unlawfully cut by the defendant; but he claims to have believed that the lands from which the ties were cut had been surveyed and were open to entry and purchase, and, so believing, that he notified George B. Abbott, special agent of the general land office located at Cheyenne, that he was cutting timber from those lands and intended to enter and pay for the same. This notice appears to have been given July 1, 1898. Subsequently, on July 22, 1898, Abbott, as special agent, notified defendant to stop cutting, and forbade him removing and selling any of the ties which had already been cut. Negotiations were then opened between the defendant and the commissioner of the general land office at Washington with reference to defendant's rights. These negotiations resulted in a telegraphic dispatch from the land commissioner, bearing date July 26, 1898, as follows:

"Agent Abbott has been telegraphed to release J. C. Teller's ties on written promise for latter to reimburse government for balance ascertained after investigation; also advise railroad of present claim by government to ties.

Teller can apply to purchase timber on public lands under land office circular March seventeenth, ninety-eight.

"[Signed]                                    Binger Herman, Com'r."

On receipt of this communication from the land commissioner, the defendant construed it as entitling him to proceed with the cutting of ties and authorizing him to apply to purchase the timber coming therefrom, and, so construing it, he in good faith, as he claims, notified his foreman, who had stopped work on receiving Abbott's notice of July 22d, to proceed with the cutting. The negotiations already referred to resulted on August 3, 1898, in the execution and delivery of the following instruments; that is to say:

(1) "I, George B. Abbott, special agent of the general land office of the United States of America, and acting for and in behalf of the said general land office, do hereby release from any and all claims of the United States of America certain railroad ties now in the possession of J. C. Teller, at two certain tie camps situated and located in the county of Carbon, state of Wyoming; one of said camps being at Mullen creek, about four miles from the mouth of Mullen creek, and the other of said tie camps being situated and located in said county and state near Brush creek, in said county and state, about five miles from the mouth of said Brush creek. And the said George B. Abbott, special agent as aforesaid, for and on behalf of the said general land office, does hereby release from any claim which the United States of America may now have or may hereafter make to certain railroad ties now in the possession of the said J. C. Teller, in the North Platte river at Ft. Steele, and at a point on the North Platte river where Mullen creek empties into said river; the said ties being ties concerning the cutting of which the said George B. Abbott is now making an investigation. The said release is made in consideration of an agreement this day entered into between J. C. Teller and the United States of America, and by virtue of instructions received from the general land office of the United States of America.

"[Signed]                          George B. Abbott, Special Agent G. L. O."

(2) "Know all men by these presents, that whereas, George B. Abbott, special agent G. L. O. of the United States of America, has laid claim in the name of the United States of America to certain railroad ties in the county of Carbon, state of Wyoming, under the claim that the said railroad ties were cut by one J. C. Teller contrary to the laws of the United States of America, and has claimed said ties for the United States of America; and whereas, the said George B. Abbott, special agent as aforesaid, is investigating the question as to whether or not certain other ties now in the possession of the said J. C. Teller in the North Platte river at Ft. Steele, Wyo., and in the North Platte river between the said Ft. Steele, Wyo., and a point on the North Platte river where Mullen creek empties into the said river, were cut contrary to the laws of the United States of America; and whereas, the said J. C. Teller is desirous of disposing of the said ties, including those claimed by the said George B. Abbott, and those now being investigated by the said George B. Abbott; and whereas, the said George B. Abbott has received certain instructions from the general land office of the United States of America relative to the claiming of said ties: Now, therefore, in consideration of the premises and in consideration of the fact that the said George B. Abbott is about to release said ties so claimed by the United States, and is about to release from any intended seizure or claim any of said ties now being investigated by the said George B. Abbott, the said J. C. Teller does agree to and with the United States of America that he will pay to the said United States of America, through the receiver of public moneys of the United States land office, at Cheyenne, Wyo., the full value according to the rules laid down in the letter of N. C. McFarland, commissioner of the general land office, department of the interior, on March 1st, 1883, the said letter and its contents being set forth in a circular of instructions to the special agents of the general land office relative to timber on public lands, issued March 8th, 1898, at page 46 thereof; it being intended in and hereby to provide that the number of ties so to be paid for by the said J. C. Teller shall depend upon and be determined by the report and investigation of the said George B. Abbott, special agent as aforesaid, and that the fact as to whether or not there has been a trespass on the part of the said J. C.

Teller, and as to whether or not the said ties belong to the United States of America, and as to which rules set forth in the said commissioner's letter in fixing damages shall apply, is to be determined by the said general land office.

"In witness whereof, I have hereunto set my hand and seal this third day of August, A. D. 1898.

"[Signed]  J. C. Teller.  [Seal.]"

"In the presence of Geo. H. Benjamin."

Immediately on the delivery of these instruments on August 3, 1898, the claim of the United States under the notice was withdrawn, and defendant proceeded to dispose of the ties referred to in the notice. After July 26, 1898, the date of the receipt of the dispatch from the commissioner of the general land office already set out, defendant, under the belief, as he claims, that the directions of the commissioner permitted him to proceed with the cutting of the ties on the lands in question, proceeded with his work and probably cut some 3,000 or 4,000 ties between that date and August 3, 1898, but, on being advised of his error, immediately gave notice to his foreman in charge of the choppers to cease cutting. By reason of failure to bring this notice speedily home to each and every chopper, some small amount of ties was cut after August 3, 1898. so that, of the 44,000 ties cut from government lands and seized by the marshal under the order of delivery made in the case, some were cut prior to July 22d, some between July 26th and August 3d, and some after August 3d. The trial court ruled that the contract created by the two instruments already set out vested title to all of the ties cut on or before August 3d, in the defendant, and that as to such ties the verdict must be in favor of the defendant, and the value thereof assessed against the United States, but that all ties cut after August 3, 1898, belonged to the United States and were wrongfully cut by the defendant, and that, in assessing damages against the United States for such of the ties as were cut prior to August 3d, the jury should deduct from their verdict the value of all ties cut by the defendant after August 3d. On this subject the court below charged the jury as follows: "That this agreement and release" of August 3, 1898, as set forth in defendant's answer, "constituted a settlement between the parties for all ties cut prior to the date of the agreement, viz. August 3, 1898;" and "that, in view of the pleadings and evidence in this case, you should find that the right of property and the right of possession of the ties returned as taken by the United States marshal under his writ of replevin were in the defendant at the time they were so taken by the marshal, except the ties which you may find from the evidence were cut after the 3d day of August, 1898, the date of this agreement." An exception duly taken by the plaintiff to this part of the charge raises the important question argued in this case. There are minor exceptions taken to the exclusion of evidence and to the charge relating to the measure of damages, which will be sufficiently noticed in the opinion.

Edward A. Rozier, for the United States.

Willard Teller (Clayton C. Dorsey, on the brief), for defendant in error.

Before CALDWELL and THAYER, Circuit Judges, and ADAMS, District Judge.

ADAMS, District Judge, after stating the case as above, delivered the opinion of the court.

A reference to the two instruments executed by Abbott and Teller discloses that the parties had in contemplation something besides the ties to which the government laid claim in the notice given by Abbott on July 22d. After reciting the existence of that claim, the instrument signed by Teller proceeds to recite that Abbott "is investigating whether or not certain other ties now"—that is to say, on August 3d— "in the possession of Teller," and in the same region where the ties were cut prior to July 22d, were unlawfully cut. The instrument then

recites that Teller is desirous of disposing of said ties, including those claimed by Abbott and "those now being investigated by him." After these recitations the instrument proceeds as follows:

"In consideration of the premises and in consideration of the fact that the said George B. Abbott is about to release said ties so claimed by the United States, and is about to release from any intended seizure or claim any of said ties now being investigated by the said George B. Abbott, the said Teller does agree to and with the United States of America," etc.

The instrument signed by Abbott, referred to as the "release," in clear and unambiguous language purports to release "from any and all claims of the United States of America certain ties now"—that is to say, August 3, 1898—"in the possession of J. C. Teller" at the camps from which the ties in controversy came. No question is raised by the pleadings or assignment of errors touching Abbott's authority to act for the United States and to execute the release signed by him. The two instruments, therefore, each executed in consideration of the other, constitute a contract between the United States and Teller, and must be construed so as to give effect, if possible, to each and all of its provisions.

The several excerpts to which attention has just been called clearly show that the parties to the contract had in mind something besides the ties cut prior to July 22d, to which Abbott's notice of that date relates, and no reason is perceived why the language employed in the contract should not be given its ordinary and natural meaning; and, when such language clearly comprehends all ties then in the possession of Teller, no forced limitation should be imposed upon it so as to exclude any of such ties from its operation. In our opinion, the language is too broad and comprehensive to admit of the construction now claimed by counsel for the United States. There was no error, therefore, in the ruling of the court below that the contract of August 3d devested the United States of the title and right of property in all ties cut prior to August 3, 1898. This leaves only such ties as were cut after that date subject to further consideration, and it is important to bear this in mind in considering exceptions to the action of the trial court in excluding evidence.

George B. Abbott was sworn as a witness on the part of the plaintiff, and during his examination testified that he had no personal knowledge as to how many ties were cut by the defendant, but that he had taken affidavits of choppers who had worked for the defendant. After he had thus disqualified himself to testify as to the only material question in the case, he was asked this question:

"You may state whether or not, at the time you made the contract and gave the release referred to in the pleadings, the number of ties which were released at the Mullen creek camp was the number of 18,792."

This question was ruled out by the court on objection made by the defendant. This ruling was clearly correct. The answer could only have been the result of information gathered by him from the choppers, and therefore hearsay, and of no value. Not only so, but an answer to the question as put would have been so remotely related to the only issue left for trial in the case as to be of no substantial value.

Other questions were asked of witness Abbott, and objected to by defendant, and ruled out by the court. To all these questions we

have given careful consideration, and conclude that no reversible error was committed by the court. The questions either called for hearsay evidence or the opinion of the witness on the construction of the contract, or related to ties not involved in the controversy before the court or too remotely connected with them to throw any light on the issue.

The next assignment of error relates to that portion of the charge to the jury which reads as follows:

"In fixing the value of the ties, if you find from the evidence that any were cut after the 3d day of August, 1808, you must ascertain from the evidence whether they were willfully cut or caused to be cut by the defendant. If you find from the evidence that they were willfully cut after that date by the defendant or by his direction, then the amount to be deducted would be their value at the place where they were taken, with no deduction for his labor or expense. However, if you should find from the evidence that some ties were cut, but that the defendant was an unintentional or mistaken trespasser, then the amount to be deducted would be their value at the time they were so cut, less the amount which he or his employés have added thereto by their labor; in other words, the value as they stood in the tree, which the testimony tends to show was about three cents per tie."

It is not contended that the proposition of law here announced is incorrect, but that there was no evidence on which to submit the issue as to whether the defendant was an intentional or mistaken trespasser. It is urged by counsel for plaintiff that defendant had been informed not only that the land from which the ties were cut was unsurveyed public land, but had been notified on July 22d to stop work thereon for that reason. This is true; but it is also true that defendant on July 26th received a dispatch from the commissioner of the general land office which, according to his uncontradicted testimony, he construed to give him the right to proceed with the cutting of ties on terms referred to in the dispatch. He testifies that, relying on that dispatch, he proceeded in a limited way to cut ties, believing in good faith that he had been accorded that privilege, until he was advised early in August by his attorney to the contrary, and that he immediately thereafter gave orders to suspend all work. Evidence of this kind is undoubtedly sufficient to go to the jury on an issue whether defendant was a willful trespasser or a mistaken or unintentional trespasser in cutting ties after August 3d. The charge of the court, being correct in law (Bolles Wooden-Ware Co. v. U. S., 106 U. S. 432, 1 Sup. Ct. 398, 27 L. Ed. 230; Golden Reward Min. Co. v. Buxton Min. Co. [C. C.] 79 Fed. 868), was warranted by the proof, and no error was thereby committed.

The next assignment of error relates to that portion of the charge which tells the jury that, if any of the ties cut after August 3d were cut without the knowledge or consent of the defendant, he would not as to such ties be a willful trespasser. This is undoubtedly correct in law, and the criticism to the effect that there was no evidence on which to predicate it is, in our opinion, ill founded.

This concludes a consideration of all the assignments of error which were seriously pressed upon our attention in argument or brief, and, having examined the entire record and believing that the result reached was substantially right, the judgment is affirmed.