[No. 9265. In Bank. — November 23, 1885.]

## WILLIAM S. COTHRIN, APPELLANT, *v.* PETER E. FABER ET AL., RESPONDENTS.

PUBLIC LAND — PRE-EMPTION — RELATION AND PRIORITY — SOLDIERS' ADDITIONAL HOMESTEAD ACT. — Where a person, possessing all the necessary qualifications of a pre-emptor, and having complied with the requirements of the pre-emption laws, is permitted by the commissioner of the land-office at Washington to enter certain public land which is subject to pre-emption, and to pay therefor, receiving from the government the appropriate evidence of payment, the right thus acquired relates back to the inception of the proceedings taken by him for its acquisition under the pre-emption laws, and takes priority over a subsequent location under the Soldiers' Additional Homestead Act of March 3, 1873.

APPEAL from a judgment of the Superior Court of El Dorado County.

The action was brought to recover the possession of

land. The further facts are stated in the opinion of the court.

*Charles F. Irwin,* for Appellant.

*A. P. Catlin,* for Respondents.

MYRICK, J. — This case was heard in Department One of this court, and an opinion filed October 28, 1884, affirming the judgment of the court below. Hearing in Bank was granted, and has been had. For the reasons given in the opinion in Department the judgment is affirmed.

Ross, J., MORRISON, C. J., McKEE, J., and THORNTON, J., concurred.

The following is the opinion in Department One, above referred to:—

Ross, J. — The case shows that in the month of November of the year 1872, the land in controversy was public land, and was then unoccupied and subject to settlement and pre-emption under the laws of the United States; that at that time and under those circumstances the defendant, Peter Faber, possessing all the necessary qualifications, went into possession of and settled upon the said land for the purpose of making it his permanent residence, and to obtain the same by purchase from the United States under and by virtue of the pre-emption laws, and on the following day filed in the office of the register and receiver of the United States land-office, in the district in which the land was situated, his declaratory statement, alleging his settlement and his desire to purchase the land, and setting forth all other matters required by law to be stated; that on the fourteenth day of May, 1875, said defendant proved up his claim to the land in the office of the register and receiver under and in accordance with the rules of the United States land department, and then applied to enter the land. Upon the transmission of defendant's proofs to the com-

missioner of the land-office at Washington, that officer, on the 7th of September, 1877, held the land to be mineral in character, but subsequently and· in February, 1878, upon additional evidence touching its character, decided it to be agricultural, and on the 15th of May, 1878, said defendant was permitted to enter the land, and having paid therefor, received from the proper officer the proper receipt.

Subsequent to the defendant's settlement upon the land in question, and after he had made proof of his claim thereto in the office of the register and receiver, to wit, in the latter part of the year 1875, one Greene, in the state of Michigan, and one Lamar, in the state of Kansas, made affidavits, as required by statute, to obtain land under the act of Congress granting additional homesteads to soldiers, and at the same time each of them signed an application in the form required by said act of Congress, except that no description of any land was given therein. Each, also, at the same time,· together with his wife, signed and acknowledged a paper purporting to be a power of attorney, appointing —— their true and lawful attorney for them, and in their name, place, and stead, "to enter into and upon and to take possession of any and all pieces and parcels of land in the state of California which we may now own, or which we may hereafter acquire or become seised of, or in which we may now or hereafter be in any way interested, located under the provisions of the second section of the act of March 3, 1873, under which laws I am entitled to select and enter 120 acres of land in addition to my forty acres homestead; and we further authorize and empower said attorney to grant, bargain, sell, devise, lease, and convey, and confirm said land or any part thereof to such person or persons, and for such price, as to our said attorney shall seem meet, and for that purpose to execute any deed or conveyance thereof." No one was named in the instruments as attorney in

fact.   After the execution of these papers by Greene and Lamar, and prior to the 1st of January, 1878, the papers came into the possession of one Snow,—in what way does not appear.   Some time in the latter part of 1877, one Farr "purchased said papers, and the right of said Greene and Lamar to locate land under said claim to an additional homestead."   The papers were delivered by Snow to Farr, and thereupon the latter "filled in said application of Greene" with a description of one part, and "filled in said application of Lamar" with a description of the other part, of the land upon which Faber was settled, and which he had applied to enter as already stated.

"Said applications and proofs were thereupon presented to the register of the United States land-office at Sacramento, California.   Said register thereupon issued his certificates, which were deposited in the general land-office at Washington; thereafter, on the first day of May, 1878, letters patent were issued by the government of the United States to the said Greene for the land described in his said application, and also letters patent were issued on the same day to the said Lamar by the government of the United States for the land described in his said application.   Each of the said letters patent were delivered to the said Farr, and thereafter, on the twentieth day of May, 1878, Farr inserted in each of the powers of attorney, hereinbefore stated to have been signed and acknowledged by Greene and wife and Lamar and wife, the following words, to wit: 'David Johnston of the county of Sacramento, state of California.'   Said Johnston thereupon, at the request of Farr and in the name of Greene and Ruth Ann Greene, his wife, made, executed, and delivered to the plaintiff herein a good and sufficient conveyance of all the land described in the letters patent issued to said Greene, and on the same day the said Johnston, at the request of said Farr, and in the name of said Lamar and his wife, Susan

Lamar, made, executed, and delivered to the plaintiff herein a good and sufficient conveyance of all the land described in the letters patent to Lamar."

Plaintiff's cause of action rests upon the deeds thus executed to him.

Upon these facts, we are of opinion that he is not entitled to recover the land from the defendant. When on the 15th of May, 1878, defendant was permitted to enter the land pursuant to the proceedings initiated by him in 1872, and to pay for it, receiving from the government the appropriate evidence of payment, he acquired a right which related back to the inception of the proceedings taken by him for its acquisition under the pre-emption laws. The right thus acquired antedated the beginning of the proceedings under which the plaintiff claims and secured defendant in the possession he had all along held of the land, and entitled him to the ultimate conveyance of the legal title to it.

Judgment affirmed.