## UNITED STATES v. NORRIS.

*(Circuit Court, W. D. Louisiana. January Term, 1890.)*

PUBLIC LANDS—HOMESTEAD ENTRY—SALE OF TIMBER—LIABILITY OF PURCHASER FROM
TRESPASSER.

In 1879, G. made application, affidavit, and paid fee required under homestead laws to enter public land. G. did not go upon the lands, or in any way after that comply with his obligations as a homesteader. In 1883 and '84, G. sold to L. & N. the right to cut the lumber from the lands. The latter cut and sold to Norris 500 timber logs, worth $1.25 per thousand, lying cut on the ground; worth $4.50 per 1,000 in the float at the mills. Norris purchased them in good faith at the mills. In 1889, G. was allowed by the department to become a beneficiary under the act of 1880, by receiving from him $1.25 per acre, less the fee paid in 1877, for the land, and gave him a patent for the land. Plaintiff now sues Norris for the value of the timber at the place he bought it from L. & N. *Held*, that G., having been shown to have made application, etc., in 1877, in bad faith, and for the purpose only of appropriating the timber on the lands, without in any further way complying with the duties imposed on a homesteader, was neither the legal nor equitable owner of the land or timber thereon when L. & N. cut and sold the timber to Norris, in 1883 and 1884; that, without passing upon G.'s title under his patent to the lands, there is nothing in the law forbidding the plaintiff to hold Norris liable for the timber cut by L. & N. as trespassers on public land, and sold to Norris; that Norris, having bought in good faith, should be held liable for the value of the timber logs at the time they became severed from the land,—that is, for $1.25 per 1,000.

*M. C. Elstner*, U. S. Atty.
*J. L. Bradford*, for defendant.

BOARMAN, J. At law. Jury being waived, the court finds the following facts: Henry Gill, in 1877, made application and affidavit, and paid required fee under the homestead laws, to enter certain lands lying in Louisiana, then public lands. Gill did not at any time go upon, or in any way improve, the lands. That in 1883 and 1884 he sold to Lanier & Nixon, for a trifling sum, all his right to cut the timber on said lands. That Lanier & Nixon cut 500 pine logs from the land, measuring, in all, 125,000 feet. The logs lying cut on the land were worth $1.25 per 1,000, and when placed in the bayou for floating they were worth $5.50 per 1,000. That W. B. Norris, as the agent of the defendant, bought the said logs for mill timber from Lanier & Nixon at the usual place where he bought logs for defendant's mill, in the bayou, in open market, at $5.50 per 1,000, and he knew nothing of the fact that they were cut from the said lands. Gill, in 1889, was allowed by the land department to become a beneficiary of the law of June 15, 1880. In making payment for said lands, under that law, he was credited with the amount which he had paid in 1877 as the fee required under homestead laws. Gill now has a patent for the lands under provisions of that law. Under this statement of facts, defendant denies liability, at any price, for the said logs. He relies for relief in this suit upon the facts— *First*, that Gill made his affidavit and application, paying the fee required of him for said lands, under the homestead laws; *second*, that he, notwithstanding his failure to go upon, or in any way improve, the lands, was allowed by the land department to become the owner of the lands, in 1889, by complying with the act of June 15, 1880. The government

contends that when, in 1883 and 1884, the timber was cut and sold to defendant's agent by Lanier & Nixon, that they were without authority, and were trespassers upon the public lands; that the government had at that time been divested of neither the legal nor equitable title to the lands; that Gill's affidavit, application, etc., were made in bad faith; that the land department was not authorized, under the law and facts, to allow Gill to become a beneficiary of the act of 1880; that, even if he now has a title to the lands good against the government, the government should recover against Norris, because the legal and equitable title, at the time Lanier & Nixon sold the logs, was in the government, and the timber, having become severed from the realty, was personal property, and belonged to the government; that defendant is liable for the value, $5.50 per thousand, at the place of the purchase of the logs. These several recitals make substantially the issues of law and fact in the case.

Considering these contentions, it may be sufficient for the court to determine but two of the questions, under the law and facts: *First*, whether the government, in 1877, divested itself of the legal or equitable title to the land; *second*, whether the government, by reason of the fact that the land department allowed Gill to become a beneficiary under the law of 1880, and made legal title to him of the land in 1889, is estopped from prosecuting defendant for the value of the timber cut by Lanier & Nixon, with Gill's consent, in 1883 and 1884.

Upon the first matter, the facts suggest very clearly to me that Gill's acts in making the affidavit, application, etc., in 1877, under the homestead law, were mere pretenses and fraudulent devices adopted by him for the purpose of appropriating the lumber on the land; that he never intended to comply with any of the obligations imposed on him by those laws, and he was in bad faith *ab initio*. Gill not having legal title to the land, the court is forbidden, under the circumstances, which show bad faith and fraud in him *ab initio*, to consider him as having any sort of right, equitable or otherwise, in 1883 and 1884, to authorize Lanier & Nixon to cut and sell the timber; and the defendant must be treated as having bought the timber from trespassers on public land.

Defendant's counsel, illustrating his views upon the second point, contends that the act of 1880 says, substantially, to Gill, who became a beneficiary under it in 1889: "You can now become the owner of the lands in question, for which you made application in 1877, notwithstanding you are shown to have done nothing in good faith to comply with your obligations to the government, by paying $1.25 per acre to the government, less the amount of the fee paid by you in 1877; and, when you have become the owner of the land under that law, you, nor any one else, will or can be held liable for timber cut and sold in 1883 and 1884 to defendant, when you had neither legal nor equitable title to the land." This is putting the counsel's contention strongly, but the statement is within the logical analysis of his expressed views.

In applying the law of 1880, under the admitted facts, he treats it as an act of amnesty or condonement, and under its operation he contends that defendant is relieved, notwithstanding that Lanier & Nixon, but

for the pardoning effect of the said act, should be held to be trespassers in 1883 and 1884 on public lands. Section 2 of the act of 1880 provides "that persons who have heretofore, under any of the homestead laws, entered lands properly subject to such entry, * * * may entitle themselves to said lands by paying the government price therefor."

Considering the policy of the government in offering the public lands to homesteaders, and the purpose of congress in allowing certain persons to become beneficiaries of the act of 1880, it is not straining "too curiously" after the spirit of the several laws relating to public lands to hold that the persons seeking the benefit of the act of 1880 should have "entered lands" in good faith; that the bad faith and fraudulent purpose of Gill at the time he made his affidavit, application, etc., and his failure to do, or attempt to perform, any of the obligations imposed by law upon homesteaders availing themselves of the policy of the government, for 12 years, had disqualified him so that the land department was without authority, under the facts and law, to allow him to become the owner of the lands in question. Gill, being in bad faith *ab initio*, should not have been allowed to become a beneficiary of the act of 1880. In this suit the court is unauthorized to pass upon the title of Gill now, against the government; but there is no good reason suggested for holding, with defendant's counsel, that the ownership now vested in him relates back to the date of his affidavit, application, etc., which were, as the proof shows, made for fraudulent purposes. If he was, in bad faith, merely devising a scheme to unlawfully appropriate the government's timber, there is nothing grounded in law or equity for his title acquired under act of 1880 "to relate back and fasten onto." Whatever may be his title now against the government, it would be carrying the doctrine contended for by defendant's counsel to unwarantable lengths to say that the government is estopped from holding the defendant liable in this suit for the value of the timber cut from the public lands, and appropriated by him, at a time when the ownership therein, in law and equity, was in the sovereign. The lands from which Lanier & Nixon cut the timber, purchased by defendant in 1883 and 1884, were not "entered lands," but public lands, in the purpose and policy of the homestead laws; and Gill's title to them now will not protect defendant in this suit. Defendant, having bought the timber in good faith, will be held liable for its value,—$1.25 per 1,000 feet, lying cut on the public land. In a number of similar cases, this court has held that a purchaser in good faith from trespassers, as in this case, should be held liable only for the timber logs at the time they were lying on the public lands, became movable property. Of course, the trespassers themselves would be held liable under a different rule. It has not been thought necessary to interpret or apply the last clause in the act of 1880 to the facts in this case. Without doing so the plaintiff is entitled to judgment for $156.25, and costs.