## THAYER *v.* SPRATT.

ERROR TO THE SUPREME COURT OF THE STATE OF WASHINGTON.

No. 207.   Argued March 12, 1903.—Decided April 6, 1903.

On proceedings to cancel an entry which has been transferred, where the Land Department has notice thereof, and the records show the name and address of the transferee, the transferee has a right to notice.

Upon a writ of error to a state court this court has no right to review its decision upon the ground that the finding was against evidence or the weight of evidence.

It appearing from the facts that at the time of making their entries entrymen were entitled to purchase lands under the act of Congress of June 3, 1878, for the sale of timber lands in Washington Territory and elsewhere, and that in the purchase of the land they fully complied with the laws of the United States and the rules and regulations of the Land Department; that the applications were allowed and certificates duly issued as applied for, and the lands included in the entries were at all times chiefly valuable for timber thereon and at that time unfit for cultivation; and that thereafter based upon a misconstruction of the act of 1878 the land office cancelled the entries on the ground that as the land could be cultivated after the removal of the timber it was not subject to entry as timber land:

*Held*, that the original entries were valid and that the conveyances of the original entrymen passed a good title to their grantee for which he was entitled to a patent from the United States.

THE plaintiffs in error in December, 1898, brought this action in the state court against the defendant for the purpose of quieting their title to certain land described as section 32 in township 9, etc., situated in Cowlitz County, State of Washington. They obtained judgment in their favor for the northwest and southwest quarters of the section, but the court gave judgment in favor of the defendant for the northeast and the southeast quarters of the same section, and directed that the patents for the two quarters of the section which had been issued on June 25, 1890, to plaintiffs' grantors should be held by the plaintiffs in trust for the defendant, and that the plaintiffs should execute a proper deed therefor, and in default of such deed of conveyance the decree of the court was to stand and be treated in the place of such deed. The plaintiffs appealed from that portion of the judgment just described to the Supreme Court of the State, where it was affirmed, 25 Washington, 62, and they have brought the case here for review.

The northeast and the southeast quarters of the section were entered in the proper land office in Washington under the act of Congress approved June 3, 1878, and entitled "An act for the sale of timber lands in the States of California, Oregon, Nevada and in Washington Territory." 20 Stat. 89. These entries were made on May 26, 1883, and the entrymen, after payment for the land by them to the land office and the receipt of a certificate of such payment, and about six months thereafter, assigned and transferred the certificates to the defendant for a valuable consideration paid to them by him. After such transfers had been made and a record of the deeds of conveyance had also been made in the records of Cowlitz County, which was the proper office, the Land Department informed the register and receiver of the land office at Vancouver, Washington, that action had been suspended upon the entries based upon the report of the special agent regarding the lands, and the department directed the register and receiver to give notice to the original entrymen of a time and place when and where they

might be heard, and in default that their entry would be can-
celled. The department also stated that it appeared from the
report of its special agent that the lands had been transferred
by warranty deed of March 13, 1884, to the defendant, and it
therefore directed that notice should be given him as the trans-
feree, but for some reason this direction was overlooked and
no notice was ever given defendant of the pendency of any pro-
ceedings towards the cancellation of the certificates or either
of them which had been transferred to him.

At the time he purchased the certificates the defendant re-
sided in Alpena, Michigan, and resided there for thirty years,
and the deeds to defendant, which were on record, showed his
residence to be in that place.

The notices by mail to the entrymen were not received, the
letters to them being returned as "uncalled for," and so it
happened that there was no hearing before the Land Depart-
ment upon the return of the order, and the entry was cancelled
in the absence of both of the entrymen and the defendant, the
transferee.

The action of the department was taken upon the report of
one of its inspectors, which was founded, as stated in the report
of such inspector, upon the fact that the land was not of the
character provided for in the act, for the reason that, although
covered by a heavy growth of valuable timber and chiefly valu-
able as such at that time, yet as it would be fit for cultivation
when the timber should be removed, it was on that ground
held that the land was not subject to entry under the timber
act of 1878, *supra*. This was the sole and only reason upon
which the Land Department rested its action in cancelling the
entries and certificates.

After their cancellation, certain homestead entries were made
upon these two quarter sections by Benjamin L. Hennis for the
northeast quarter, and by Ellis Walker for the southeast quarter,
patents were issued to them, and the plaintiffs deraign title from
those patentees.

Upon the trial evidence was given by the defendant as to
the characte of his ownership; that he purchased the different
quarter sections in good faith from each of the parties who

had entered them, and without any agreement in reference to the purchase before final proof, etc., and that he had never heard of the entrymen before he made the purchase from them through his agent, and paid them the sum of $800 for each quarter section, (double the price paid for the land by the entrymen to the government,) and that the total cost of the land, including his expenses paid to his agent and to the parties who made the locations, etc., amounted, as the defendant testified, to about $4400.

The defendant on the trial also gave evidence tending to show that the land in question had the finest quality of timber on it, and that in its then existing condition the land was chiefly valuable for timber and would probably run 200,000 feet to the acre. The land would have to be cleared and then it might be cultivated, but it would all have to be cleared first.

It was stipulated between the parties, on the trial, that certain papers named and on file in the office of the Commissioner of the General Land Office, and certain exhibits from the land office in Vancouver, in the State of Washington, relating to the proceedings in making the entry for the lands in question by the defendant's grantors, might be regarded as in evidence in the case and be considered by the court, and the copies of such papers then presented to the court were admitted to be " correct, full, true and complete transcripts of all proceedings of the land office at Vancouver, Washington, and of the General Land Office, Department of the Interior, Washington, D. C., touching . . . the timber land entry of Frank Smith, for the northeast quarter of section 32 (etc.), and also the timber land entry for the southeast quarter of section 32," etc. These papers showed that the entrymen for the northeast and the southeast quarters were entitled to enter the lands under the timber act, and that all the necessary facts required by the act and the Land Department officials had been proved by them to entitle them to enter the specific lands.

The finding of the court shows there has never been any dispute as to the actual condition of the land, but the entries were vacated and the certificates cancelled because the Land Department held the land was not of the kind to be entered un-

der the timber act of 1878, for the reason that, after the timber should be cleared, the land would be good agricultural land.

*Mr. Joseph Simon* for plaintiffs in error.

*Mr. George C. Stout* for defendant in error. *Mr. John H. Mitchell* and *Mr. T. H. Ward* were on the brief.

MR. JUSTICE PECKHAM, after making the foregoing statement of facts, delivered the opinion of the court.

The decision of the Land Department as to the character of the land in question resulted from an erroneous construction of the timber act of June 3, 1878. There was no dispute as to the actual condition of the land, but the department held that land so situated could not be entered under the timber act. In this construction the department made a legal error. It has been held by this court that the act included lands covered with timber, but which might be made fit for cultivation by removing the timber and working the land. *United States* v. *Budd*, 144 U. S. 154. Mr. Justice Brewer, in delivering the opinion of the court in the above case, states as follows :

" Lands are not excluded by the scope of the act because in the future, by large expenditures of money and labor, they may be rendered suitable for cultivation. It is enough that at the time of the purchase they are not, in their then condition, fit therefor. The statute does not refer to the probabilities of the future, but to the facts of the present. Many rocky hill-slopes or stony fields in New England have been, by patient years of gathering up and removing the stones, made fair farming land ; but surely no one before the commencement of these labors would have called them fit for cultivation. We do not mean that the mere existence of timber on land brings it within the scope of the act. The significant word in the statute is ' chiefly.' Trees growing on a tract may be so few in number or so small in size as to be easily cleared off, or not seriously to affect its present and general fitness for

cultivation. So, on the other hand, where a tract is mainly covered with a dense forest, there may be small openings scattered through it susceptible of cultivation. The chief value of the land must be its timber, and that timber must be so extensive and so dense as to render the tract as a whole, in its present state, substantially unfit for cultivation."

The lands in this case are within that description. The evidence shows that the timber was excellent, as good as any in that section of the country. It was as good as any ever examined by the witness, who had had large experience. In fact he said there was none better in that part of the country, and the quantity of the timber was large to the acre, but the land was not especially valuable for cultivation until it had been cleared.

Even though the decision of the Land Department was erroneous, yet having been made, and the entries and certificates cancelled, although without notice to defendant, they could not thereafter be used even as *prima facie* evidence of the validity of the original entries. It was perfectly easy to have given defendant notice of the proposed cancellation. He resided in Alpena, Michigan, and the deeds showed that fact, and the record shows the department was aware of their existence through the report of its special inspector. There is no hardship or inconvenience, therefore, in holding that, in a case, at least, where the residence is known, the transferee has the right to notice. If not known, a publication of notice ought at least to be made. It seems this is the practice of the Land Department.

It has been held in this court, in *Guaranty Savings Bank* v. *Bladow*, 176 U. S. 448, and *Hawley* v. *Diller*, 178 U. S. 476, 488, that a cancellation of a certificate of entry was not conclusive as against a transferee who had no notice and no opportunity to be heard upon the question of the original validity of the entry, but that it left the transferee without the right to use the entry certificate as *prima facie* evidence of the validity of the entry or of his subsequent claim. The transferee is, however, left free to prove the validity of the entry by any means other than the certificate. Although the assignment or conveyance of the certificates did not transfer the legal title to the

lands described therein, yet the transferee or grantee thereby became possessed of an equitable interest in the lands which could not be taken from him without some notice. The character of the certificates as a mere means of evidence could be and was destroyed, but the transferee was nevertheless not thereby deprived of his right to show the validity of the former entry.

In this case we think he has done so. He proved by his own evidence that he was a *bona fide* purchaser of the property for value paid to the entrymen, and that he had no agreement or understanding of any kind with them prior to the time that he purchased the land from them.

We do not refer to the *bona fide* character of the purchase by defendant from the entrymen for the purpose of thereby showing the defendant to be entitled to the benefit of that character under section 2 of the timber act of 1878. The reason that he is not so entitled is that by the assignment of the certificates he did not become clothed with the strict legal title to the land, but simply with an equity, and the act does not cover such a case. *Hawley* v. *Diller*, 178 U. S. 476, 487. We refer to the *bona fide* character of the purchase by defendant, for the purpose only of showing it was without any prior agreement or understanding with the entrymen, and was not in violation of the provisions of the timber act.

The stipulation between counsel that the papers on file in the Land Department might be regarded as in evidence and considered by the court, permitted the court to regard those papers as properly introduced in evidence and competent to be considered by it in the further consideration of the case. Those papers show a compliance on the part of the entrymen with all the provisions of the timber act and a valid entry under it in regard to the lands in question. As the entries had not been cancelled for any fraud in fact, but only upon an erroneous interpretation of the law by the department, the evidence of such error being apparent on the trial, the defendant did all he was required to do in order to show the entries valid, and if the plaintiffs wished to show any fraud in fact, to overcome the case made by the defendant, they were called upon to do so.

otherwise, the original proof being sufficient to warrant the issuing of the certificates, that proof would be regarded as sufficient on the trial of this suit.

There is not a word of any proof showing any fraudulent act on the part of the entrymen or of their transferee, the defendant herein, and, on the contrary, there is proof of an absence of any fraud and the *bona fide* purpose on the part of the entrymen to properly avail themselves of the act of 1878.

But however this may be, we are precluded by the finding of facts in the state court from looking at the evidence upon which such findings may rest. Upon a writ of error to a state court this court has no right to review its decision upon the ground that the finding was against evidence or the weight of evidence. *Egan* v. *Hart*, 165 U. S. 188; *Gardner* v. *Bonestell*, 180 U. S. 362, 370; *Bement* v. *National Harrow Company*, 186 U. S. 70, 83; *Jenkins* v. *Neff*, 186 U. S. 230, 235.

By the findings in this case it appears that the entrymen at the time of making their entries were entitled to purchase the lands under the act of Congress of 1878, and that they duly made such application, duly verified by the oath of the applicants before the register of the land office, and that in the purchase of the land they fully complied with the laws of the United States and the rules and regulations of the Land Department, and that all the requirements of the timber and stone act in regard to making a legal and valid entry and purchase thereunder were fully complied with by the entrymen, and that thereafter the applications were allowed and certificates duly issued as applied for, and the lands included in the entries were at all times chiefly valuable for the timber thereon and at that time unfit for cultivation. It was also found that the action of the land office in cancelling the timber entries was based upon a misconstruction of the act of 1878, and that the department, by reason of such misconstruction, erroneously held that land covered with a heavy growth of valuable timber, if it could be successfully cultivated after the timber was removed, was not subject to entry as timber land under that act, although the timber on the land might be itself the chief element of the value

of the land, and the land could not be cultivated at all in its then condition.

Upon these findings it is apparent that the defendant showed the validity of the entries by his grantors, and that their conveyances to him passed a good equitable title to the lands in question for which he was entitled to a patent from the United States, and that as such patent was granted to appellants, the defendant was entitled to the relief given him by the judgment.

The judgment of the Supreme Court of the State of Washington is therefore

*Affirmed.*