# CASES

## ARGUED AND DETERMINED

### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

---

### PEYTON et al. v. DESMOND.

(Circuit Court of Appeals, Eighth Circuit. February 15, 1904.)

### No. 1,878.

1. VENUE—ACTION TO RECOVER FOR TRESPASS TO REAL ESTATE—LOCAL OR TRANSITORY, ACCORDING TO LAW OF STATE WHERE BROUGHT.

Whether an action to recover pecuniary damages for trespass to real estate is real and local, or is personal and transitory, is essentially a matter of state policy or local law, and must be determined by the view taken of the nature of the action in the state in which it is brought.

2. SAME—MINNESOTA.

In Minnesota an action to recover pecuniary damages for trespass to real estate in another state is viewed, not as relating to the real estate, but only as affording a personal remedy, and transitory.

3. SAME—PLEADING—ACTION TO RECOVER FOR CUTTING AND REMOVAL OF TIMBER—WHEN TRANSITORY.

Where the facts stated and the relief demanded show that the gravamen of the action is the conversion of lumber manufactured out of trees wrongfully cut and removed from plaintiff's land by defendant, and that the purpose of the action is to recover the value of the lumber, and not damages for any depreciation in the value of the land, the action is transitory, although the trespass to the land is stated as illustrating the character of the conversion, and as bearing upon plaintiff's right to recover the value of the manufactured lumber.

4. SAME.

The giving of an instruction in such an action, at the request of the defendant, that the measure of damages recoverable was the value of the logs as they stood in the trees, could not change the nature of the action, whether or not it stated the correct measure of damages; nor can it be invoked by defendant to defeat the jurisdiction of the court.

5. PUBLIC LANDS—PROCEEDINGS TO ACQUIRE TITLE—JURISDICTION OF LAND DEPARTMENT.

The jurisdiction of the Land Department over public lands continues so long as the legal title remains in the United States, and the decisions and rulings of that department in proceedings to acquire title to such lands, prior to the act which passes the legal title from the government, are interlocutory, and are as much open to review or reversal by the

Land Department, while the legal title remains in the United States, as are the interlocutory decrees of a court open to review upon the final hearing.

**6. SAME—FINAL ACT OF LAND DEPARTMENT—TERMINATION OF JURISDICTION.**

The issuance of a patent, or such other act as passes the legal title from the government, is the final act, and the expression and entry of the final judgment, of the officers of the Land Department, and marks the termination of the jurisdiction of these officers.

**7. SAME—NOTICE OF PROCEEDINGS IN LAND DEPARTMENT.**

The power of the Land Department to review its prior rulings, and to cancel existing entries, while the legal title remains in the United States. is not unlimited or arbitrary, and can be exercised only after notice to parties in interest and due opportunity for a full hearing.

**8. SAME—CONVEYANCE BY ENTRYMAN PRIOR TO PATENT—RIGHTS ACQUIRED.**

One who purchases from an entryman, on the faith of a final receipt or patent certificate, before the issuance of a patent, takes only the equity of his vendor, subject to the authority of the Land Department to cancel the entry, while the legal title remains in the United States, if it is found that the entry is based upon an error of law or a clear misapprehension of the facts, which, if not corrected, will lead to the transfer of the government's title to one not entitled to it.

**9. SAME—DECISION OF LAND DEPARTMENT AS TO MATTERS OF FACT CONCLUSIVE IN COLLATERAL PROCEEDING.**

The Land Department being a special tribunal to which Congress has confided the administration of the public land laws, the final judgment of that department as to matters of fact properly determinable by it is conclusive, when brought to notice in a collateral proceeding.

**10. SAME—EFFECT OF STATE STATUTE.**

A state statute, purporting to regulate the effect of final receipts issued by the Land Department of the United States, cannot restrict the authority of the officers of that department in the disposition of the public lands, or withhold from the grantees of the United States any of the incidents of the transfer of the government title.

**11. SAME—APPLICATION OF DOCTRINE OF RELATION.**

The doctrine of relation is applicable to public land transactions, and. where necessary to give effect to the intent of the statute or to cut off intervening claimants, the patent is deemed to relate back to the initiatory act.

**12. SAME—HOMESTEAD PATENTEE—RIGHT TO RECOVER FOR TIMBER CUT AFTER INITIATION OF CLAIM AND BEFORE ISSUANCE OF PATENT.**

A patent issued under the homestead laws relates back to the initiation of the claim, and gives the patentee the right to recover the value of timber wrongfully cut and removed from the land after the initiation of his claim, as established by the patent proceedings, and prior to the issuance of the patent.

In Error to the Circuit Court of the United States for the District of Minnesota.

This action was brought in the Circuit Court of the United States for the District of Minnesota, Fifth Division, December 29, 1898, by George E. Desmond, a citizen of Wisconsin, against Hamilton M. Peyton and Levi A. Barber, citizens of Minnesota, and residents of the Fifth Division of the Minnesota District. The complaint alleged that the plaintiff made homestead settlement in 1890 upon a stated quarter section of public land in Wisconsin, containing merchantable pine timber aggregating 3,600,000 feet, board measure; that continuously thereafter he resided upon and occupied the land, and obtained a United States patent therefor May 16, 1898, by full and regular compliance with the homestead law; that in the winter of 1893 and 1894,

---

¶ 11. See Public Lands, vol. 41, Cent. Dig. § 315.

while he was in possession of the land under his homestead claim, the defendants "wrongfully and unlawfully and forcibly entered upon" the land, and cut therefrom all the pine timber; that they thereafter carried off and removed all of this timber, and sawed the same into lumber, and thereafter, and before the issuance of the patent to plaintiff, sold and disposed of the lumber; that the acts of the defendants were done and performed with full knowledge of the rights of the plaintiff to the timber, and against his protest; that the value of the timber prior to the cutting of the trees was $4 per thousand feet, board measure, and after being sawed into lumber was $12 per thousand feet, board measure. Judgment was prayed for $43,200, the value of the lumber, with interest. The case was soon brought to issue, but a trial was not had until October, 1902, when a verdict was returned for plaintiff in the sum of $9,425, with interest, for which judgment was given against defendants. No objection was made to the jurisdiction until immediately preceding the trial, when defendants moved that the action be dismissed for the reason, as then asserted by them, that it was one for trespass to realty in Wisconsin, and was therefore local, and not within the jurisdiction of the court below. The action upon this motion was as follows:

"Mr. O'Brien [for plaintiff]: * * * This action is brought to recover the value of the timber cut and carried away from the land. It is not, under the statutes of Minnesota, nor under the practice of this state, an action of trespass. It is an action in trover, pure and simple; and the measure of damages here is the value of the timber when cut from the land, and not the injury to the land. The resulting injury to the land in this case is not alleged as a matter of damage, nor would the court permit testimony to be introduced to show it. It is really an action of trover, because the damages sought to be recovered is the value of the property when severed from the land. * * *

"Mr. Hayden [for defendants]: I will concede that they could have made a transitory action out of this matter, by using the same facts, if they had seen fit to bring their action in trover instead of in trespass.

"The Court: I think I understand your position fully. It is not a matter of words, but it is a matter of the substantive facts, constituting the plaintiff's right to recover. He seeks to recover in this case—the complaint leaves no doubt that he so seeks to recover—the value of the timber at the latest stage when it can be traced into your hands, to wit, the value of the lumber. He does not seek to recover damages for the depleted value of the land, which is the essential feature of a suit in trespass. The motion is denied."

Other rulings at the trial were to the effect that the title obtained by plaintiff, by his compliance with the homestead law, and by the issuance to him of the patent for the land, related back so as to enable him to maintain this action.

The evidence showed that plaintiff and one Benjamin F. Judd settled upon the land prior to the passage of the land grant forfeiture act of September 29, 1890, c. 1040, § 2, 26 Stat. 496 [U. S. Comp. St. 1901, p. 1599], under which the land was restored to the public domain; that each claimed to have settled with a view to obtaining title under the homestead laws of the United States · that each claimed to be the prior settler, and each presented in due time at the local land office an application to make homestead entry, but the application of Judd, being presented first, was allowed by the local land officers, and that of the plaintiff rejected; that a contest, based upon plaintiff's claim of prior settlement, was then commenced in the local land office by plaintiff against Judd's entry, the proceedings in which resulted in a decision by the Secretary of the Interior against the plaintiff, January 7, 1893; that Judd on July 17, 1893, commuted his homestead entry, and obtained a patent certificate, but no patent was ever issued to him; that plaintiff on October 9, 1893, or possibly when Judd submitted final proof upon his entry, instituted in the local land office further contest proceedings against Judd's entry, which resulted in a decision by the Secretary of the Interior May 23, 1896 (Desmond v. Judd, 22 Land Dec. Dep. Int. 619), declaring that Judd had not in good faith maintained his residence on the land as required by the homestead law, and directing the cancellation of his entry; that, following this decision, plaintiff made final homestead entry of the land, under the statute requiring five years' residence, and under that entry obtained a United States patent May 16, 1898;

that in the meantime, on October 11, 1893, the lands were conveyed by Judd to defendants; that defendants had knowledge of, and participated in, the contest proceedings in the Land Department which resulted in the cancellation of Judd's entry; and that the cutting and conversion of the timber by defendants occurred in the winter of 1893 and 1894, while the contest proceedings last named were pending.

Arthur H. Crassweller (Frank Crassweller, on the brief), for plaintiffs in error.

C. D. O'Brien (Thos. D. O'Brien and P. H. Seymour, on the brief), for defendant in error.

Before SANBORN, THAYER, and VAN DEVANTER, Circuit Judges.

VAN DEVANTER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

By the common law of England, an action for the recovery of damages for injury to land is local, and can be brought only where the land is situated. This is the law in most of the states of the Union. 1 Chitty, Pl. 281; Shipman, Com. L. Pl. (2d Ed.) 201, 383; Cooley on Torts, 471; Livingston v. Jefferson, 15 Fed. Cas. 660, No. 8,411; McKenna v. Fisk, 1 How. 241, 11 L. Ed. 117; Ellenwood v. Marietta Chair Co., 158 U. S. 105, 15 Sup. Ct. 771, 39 L. Ed. 913. The operation of this common-law rule has been much restricted by legislation in England (British South Africa Co. v. Companhia de Mocambique [1893] App. Cas. 602) and in some of the states (15 Fed. Cas. 665, note; Genin v. Grier, 10 Ohio, 209, 214). There are other states in which the rule never prevailed. Holmes v. Barclay, 4 La. Ann. 63. The matter is essentially one of state policy or local law. As was said by Mr. Justice Gray in Huntington v. Attrill, 146 U. S. 657, 669, 13 Sup. Ct. 224, 36 L. Ed. 1123:

"Whether actions to recover pecuniary damages for trespasses to real estate * * * are purely local, or may be brought abroad, depends upon the question whether they are viewed as relating to the real estate, or only as affording a personal remedy. * * * And whether an action for trespass to land in one state can be brought in another state depends on the view which the latter state takes of the nature of the action."

In Minnesota an action for pecuniary damages for trespass to real estate in another state is viewed, not as relating to the real estate, but only as affording a personal remedy. It is there deemed to be transitory in nature, and not local. In Little v. Chicago, etc., Railway Co., 65 Minn. 48, 67 N. W. 846, 33 L. R. A. 423, 60 Am. St. Rep. 421, the Supreme Court of that state, in sustaining the jurisdiction of the courts of the state over an action brought to recover damages for injuries to real estate situated in Wisconsin, said:

"The reparation is purely personal, and for damages. Such an action is purely personal, and in no sense real."

By the existing judiciary act (Act Aug. 13, 1888, c. 866, § 1, 25 Stat. 433 [U. S. Comp. St. 1901, p. 508]) it is declared:

"That the Circuit Courts of the United States shall have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars and

* * * in which there shall be a controversy between citizens of different states, * * * but where the jurisdiction is founded only on the fact that the action is between citizens of different states, suit shall be brought only in the district of the residence of either the plaintiff or the defendant. * * *"

This action presents a controversy between citizens of different states, and was brought in the district and division of the residence of the defendants. It is of a civil nature, is a common-law action, and the matter in dispute exceeds, exclusive of interest and costs, the sum or value of $2,000. Being also an action which is cognizable in the courts of the state, as before shown, it is equally within the concurrent cognizance of the Circuit Court of the United States, within that state. It was said by Mr. Justice Field in Gaines v. Fuentes, 92 U. S. 10, 18, 20, 23 L. Ed. 524, in referring to the jurisdiction of the federal courts of suits at common law or in equity in which there is a controversy between citizens of different states:.

"The Constitution imposes no limitation upon the class of cases involving controversies between citizens of different states to which the judicial power of the United States may be extended, and Congress may therefore lawfully provide for bringing, at the option of either of the parties, all such controversies within the jurisdiction of the federal judiciary. * * * There are no separate equity courts in Louisiana, and suits for special relief of the nature here sought are not there designated suits in equity. But they are none the less essentially such suits; and if, by the law obtaining in the state, customary or statutory, they can be maintained in a state court, whatever designation that court may bear, we think they may be maintained by original process in a federal court, where the parties are, on the one side, citizens of Louisiana, and, on the other, citizens of other states."

Even if the action be regarded as one for the recovery of damages for injury to land, we think it was cognizable in the circuit court.

But we believe this is an action for the recovery of damages for the conversion of personal property—one more in the nature of trespass de bonis asportatis or trover than of trespass quare clausum fregit—and that it is transitory, and not local, under the common-law distinction. By the laws of Minnesota (sections 5131, 5228–5231, Gen. St. 1894), the forms of actions existing at common law are abolished, and the first pleading or complaint by the plaintiff is required to contain a plain and concise statement of the facts constituting his cause of action, and a demand for the relief to which he supposes himself entitled. The facts stated and the relief demanded, rather than the form of statement, determine the nature of the action. The facts here stated and the relief demanded show that the gravamen of the action is the conversion of the lumber manufactured out of the trees, and that the purpose of the action is to recover the value of the lumber. There is no direct statement of a depreciation in the value of the land by reason of the trespass, and there is no attempt to dwell upon the injury to the land by stating that the remaining trees or undergrowth were injured, that roads were constructed through the land, or that the soil was disturbed in hauling away the pine timber, or was incumbered with the limbs and tops of the trees removed. This, and the fullness and particularity with which the complaint states the manufacture of the severed trees into lumber and their conversion, shows that the conversion is deemed the principal thing, and that the trespass is stated only as illustrating

the character of the conversion, and as bearing upon plaintiff's right to recover the value of the manufactured lumber, which, as alleged, is identical with the amount for which judgment is demanded. The fact that the defendants did not question the nature of the action until at the trial, almost four years after the action was commenced, and that then the plaintiff promptly and decisively declared it to be one to recover the value of the timber when severed from the land, and not damages for any resulting injury to the land, requires that any doubt or uncertainty as to the nature of the action arising from the fullness of statement in the complaint be resolved in favor of the jurisdiction; the case being one where, upon the facts stated, the plaintiff, in commencing his action, could have made the trespass to the land the gravamen thereof, or, waiving that, could have relied upon the conversion. When the timber was severed from the land it became personal property, but the title to it was not changed. It remained the property of the owner of the land, as before the severance, and he could have followed and reclaimed his property into whatever jurisdiction it might have been taken, or he could have maintained an action in the nature of trespass de bonis asportatis for damages for its unlawful asportation, or he could have maintained an action in the nature of trover for damages for its conversion. United States v. Cook, 19 Wall. 501, 22 L. Ed. 210; Schulenberg v. Harriman, 21 Wall. 44, 64, 22 L. Ed. 551; United States v. Steenerson, 1 C. C. A. 552, 50 Fed. 504; McGonigle v. Atchison, 33 Kan. 726, 7 Pac. 550; Nelson v. Burt, 15 Mass. 204; Riley v. Boston Water Power Co., 11 Cush. 11; Farrant v. Thompson, 5 B. & Ald. 826; Richardson v. York, 14 Me. 216; Moody v. Whitney, 34 Me. 563; Whidden v. Seelye, 40 Me. 247, 255, 63 Am. Dec. 661; Bulkley v. Dolbeare, 7 Conn. 232; Wadleigh v. Janvrin, 41 N. H. 503, 520, 77 Am. Dec. 780; Greeley v. Stillson, 27 Mich. 153; Tyson v. McGuineas, 25 Wis. 656, 659; Mooers v. Wait, 3 Wend. 104, 20 Am. Dec. 667; Wright v. Guier, 9 Watts, 172, 36 Am. Dec. 108; Harlan v. Harlan, 15 Pa. 507, 53 Am. Dec. 612; Forsyth v. Wells, 41 Pa. 291, 80 Am. Dec. 617. The rule for determining the character of the action is well stated in 2 Waterman on Trespass, § 1102:

"Although, as standing trees are part of the inheritance, and the severing them from it is deemed an injury to the freehold, for which trespass quare clausum fregit is the appropriate remedy, yet the party may waive that ground of recovery, and claim the value of timber only thus severed and carried away. In the one case the entering and breaking of the close is the gist of the action; in the other, the taking and carrying away of the property. In the latter case the action is transitory, and not local."

This case is unlike Ellenwood v. Marietta Chair Co., 158 U. S. 105, 15 Sup. Ct. 771, 39 L. Ed. 913, relied upon by the plaintiffs in error, because there the allegations of the petition made a continuing trespass upon the land, covering a period of more than 10 years, the principal thing, and the conversion of the timber only incidental. The case of Stone v. United States, 167 U. S. 178, 182, 17 Sup. Ct. 778, 42 L. Ed. 127, is more in point. There the petition stated the ownership of the lands by the plaintiff, and that the defendant "unlawfully, wrongfully, and willfully cut from the said lands 77,441 trees." It then stated with much particularity that the defendant thereafter manufactured the trees into lumber and railroad ties and converted these to his own use,

and, after stating the value of the trees when standing upon the land, and the value of the manufactured products at the time of the conversion, demanded judgment for the latter. After distinguishing the case of Ellenwood v. Marietta Chair Co., Mr. Justice Harlan, speaking for the court, said:

"In the present case the petition, it is true, avers that the United States was the owner of the lands from which the trees were cut, but the gravamen of the action was the conversion of the lumber and the railroad ties manufactured out of such trees, and a judgment was asked, not for the trespass. but for the value of the personal property so converted by the defendant. The description in the petition of the lands and the averment of ownership in the United States were intended to show the right of the government to claim the value of the personal property manufactured from the trees illegally taken from its lands. Although the government's [defendant's] denial of the [government's] ownership of the land made it necessary for it to prove its ownership, the action, in its essential features, related to personal property, was of a transitory nature, and could be brought in any jurisdiction in which the defendant could be found and served with process."

That case is so nearly identical with the present one that the decision of the Supreme Court therein controls the determination of the question now under consideration, and requires that this action be held to be transitory and within the jurisdiction of the Circuit Court.

It is said that "the court charged the jury that the measure of damages was not the value of the logs taken, but their value as it appeared in the tree," and because of this we are asked to declare this action local. This instruction was given at the request of the defendants. If it properly states the rule for measuring the damages to be awarded in an action for the conversion of personal property under the circumstances shown at the trial (Wooden Ware Co. v. United States, 105 U. S. 432, 27 L. Ed. 230; Forsyth v. Wells, 41 Pa. 291, 80 Am. Dec. 617; Gentry v. United States, 41 C. C. A. 185, 101 Fed. 51; United States v. Homestake Mining Co., 54 C. C. A. 303, 117 Fed. 481), it is in harmony with the court's jurisdiction of the case; and, if it states the rule more favorable to the defendants than they were entitled to ask, its only effect has been to diminish the damages which otherwise would have been awarded to the plaintiff—a matter which cannot be invoked by the defendants to defeat the jurisdiction or otherwise. It was correctly ruled at the beginning of the trial, and again at its close, that the action was one for the conversion of personal property and not for trespass to land.

Does plaintiff's title under the patent issued May 16, 1898, upon his homestead entry, relate back to a time anterior to the cutting of the timber by the defendants in the winter of 1893 and 1894, and entitle him to maintain this action? The solution of this question depends upon the·effect to be given in this action to the proceedings in the Land Department of the United States upon the adverse claims of the plaintiff and Judd. The land covered by the patent issued to the plaintiff, while formerly within a land grant made in aid of the construction of a railroad, was restored to the public domain under the act of September 29, 1890, c. 1040, § 2, 26 Stat. 496 [U. S. Comp. St. 1901, p. 1599], with a direction that actual settlers in good faith at the date of the act should have a preference right of entry, and should "be regarded as such actual settlers from the date of actual settlement or occupation." Proceedings

to acquire the title to this land, instituted and conducted in the Land Department, with due notice to the parties in interest, and with opportunity for full hearing, resulted in the issuance of a patent conveying the government's title to the plaintiff.   During the pendency of these proceedings, while the legal title was yet in the United States, and with notice of plaintiff's claim, the defendants purchased the land from Judd, cut and removed therefrom the timber, and sold the lumber into which it was sawed by them.   In doing this, the defendants relied upon a ruling of the land officers which declared Judd's claim to be the superior one, and under which he had submitted proof of compliance with the homestead law, and had obtained a certificate declaring that he was entitled to a patent.   But this ruling and the issuance of this certificate were not in themselves final acts, and, no patent being issued thereon, they never became final.   The rulings and acts of the officers of the Land Department of the United States, made and done in the course of proceedings to obtain the title to public land before the issuance of a patent, are interlocutory; and, "until the matter is closed by final action, the proceedings of an officer of a department are as much open to review or reversal by himself or his successor as are the interlocutory decrees of a court open to review upon the final hearing."   New Orleans v. Paine, 147 U. S. 261, 266, 13 Sup. Ct. 303, 37 L. Ed. 162.   The issuance of a patent, or such other act as passes the legal title from the government, is the final act, and is the expression and entry of the final judgment of the officers of the Land Department; and this is the act that marks the termination of the jurisdiction of these officers and the beginning of the jurisdiction of the courts.   Moore v. Robbins, 96 U. S. 530, 533, 24 L. Ed. 848; United States v. Schurz, 102 U. S. 378, 396, 401, 402, 26 L. Ed. 167; Smelting Co. v. Kemp, 104 U. S. 636, 640, 26 L. Ed. 875; Michigan Land & Lumber Co. v. Rust, 168 U. S. 589, 592, 18 Sup. Ct. 208, 42 L. Ed. 591; Brown v. Hitchcock, 173 U. S. 473, 19 Sup. Ct. 485, 43 L. Ed. 772; Bockfinger v. Foster, 190 U. S. 116, 23 Sup. Ct. 836, 47 L. Ed. 975.   "The true rule, drawn from an examination of all of the authorities, is that the jurisdiction of the Land Department ceases where the jurisdiction of the courts commences, viz., when the legal title passes, and that there is no hiatus between the termination of the one and the beginning of the other.   Under this rule the land will always be within a jurisdiction which can administer the law, and protect both public and private rights" involved in proceedings for the acquisition of its title.   Parcher v. Gillen, 26 Land Dec. 34, 42.   So long as the legal title remains in the United States, the land laws are in process of administration.   Michigan Land & Lumber Co. v. Rust, supra; Beley v. Naphtaly, 169 U. S. 353, 364, 18 Sup. Ct. 354, 42 L. Ed. 775; Brown v. Hitchcock, supra.   And the extent, character, and validity of rights claimed under those laws, and of entries made thereunder, are subject to inquiry, examination, and determination in the Land Department.   See authorities supra, and Orchard v. Alexander, 157 U. S. 372, 15 Sup. Ct. 635, 39 L. Ed. 737; Hawley v. Diller, 178 U. S. 476, 488, 490, 20 Sup. Ct. 986, 44 L. Ed. 1157; Cosmos Co. v. Gray Eagle Oil Co., 190 U. S. 301, 309, 23 Sup. Ct. 692, 47 L. Ed. 1064.   That this is necessarily so is shown in the following statement of Mr. Secretary Lamar (5 Land Dec. Dep. Int. 494), which received the approval

of the Supreme Court in Knight v. United States Land Association, 142 U. S. 161, 178, 12 Sup. Ct. 258, 35 L. Ed. 974:

"For example, if, when a patent is about to issue, the secretary should discover a fatal defect in the proceedings, or that, by reason of some newly ascertained fact, the patent, if issued, would have to be annulled, and that it would be his duty to ask the Attorney General to institute proceedings for its annulment, it would hardly be seriously contended that the secretary might not interfere and prevent the execution of the patent. He could not be obliged to sit quietly and allow a proceeding to be consummated, which it would be immediately his duty to ask the Attorney General to take measures to annul."

But the power of the Land Department to review its prior rulings and to cancel existing entries is not unlimited or arbitrary (Cornelius v. Kessel, 128 U. S. 456, 9 Sup. Ct. 122, 32 L. Ed. 482), and can be exercised only after notice to parties in interest and due opportunity for a full hearing (Brown v. Hitchcock, 173 U. S. 478, 19 Sup. Ct. 485, 43 L. Ed. 772; Guaranty Savings Bank v. Bladow, 176 U. S. 448, 453, 20 Sup. Ct. 425, 44 L. Ed. 540; Hawley v. Diller, 178 U. S. 489, 20 Sup. Ct. 986, 44 L. Ed. 1157; Thayer v. Spratt, 189 U. S. 346, 351, 23 Sup. Ct. 576, 47 L. Ed. 845). One who purchases of an entryman before the issuance of a patent obtains no greater right or estate than is possessed by the entryman, and acquires at the most a right or equitable estate, which is subject to examination in the Land Department while the title remains in the government. In the absence of a statute providing otherwise, he is chargeable with knowledge of the state of the title which he buys, holds it subject to any equities which could be asserted against it in the hands of the vendor, and takes the risk of losing it if it is subsequently shown that the entry is based upon an error of law or a clear misapprehension of the facts, which, if not corrected, will lead to the transfer of the government's title to one not entitled to it. Hawley v. Diller, 178 U. S. 485–488, 20 Sup. Ct. 986, 44 L. Ed. 1157; Guaranty Savings Bank v. Bladow, 176 U. S. 454, 20 Sup. Ct. 425, 44 L. Ed. 540; Thayer v. Spratt, 189 U. S. 352, 23 Sup. Ct. 576, 47 L. Ed. 845. The Land Department being a special tribunal to which Congress has confided the administration and execution of the laws for the disposition of the public lands, the final judgment of the officers of that department as to matters of fact properly determinable by them is conclusive, when brought to notice in a collateral proceeding, such as this is, and is unassailable, except by a direct proceeding for its correction or annulment. Johnson v. Towsley, 13 Wall. 72, 20 L. Ed. 485; Shepley v. Cowan, 91 U. S. 330, 340, 23 L. Ed. 424; Quinby v. Conlan, 104 U. S. 420, 26 L. Ed. 800; Steel v. Smelting Co., 106 U. S. 447, 1 Sup. Ct. 389, 27 L. Ed. 226; Moss v. Dowman, 176 U. S. 413, 20 Sup. Ct. 429, 44 L. Ed. 526; Calhoun, etc., Co. v. Ajax, etc., Co., 182 U. S. 499, 510, 21 Sup. Ct. 885, 45 L. Ed. 1200; De Cambra v. Rogers, 189 U. S. 119, 23 Sup. Ct. 519, 47 L. Ed. 734; Gertgens v. O'Connor, 191 U. S. 237, 24 Sup. Ct. 95, 48 L. Ed. 164; James v. Germania Iron Co., 46 C. C. A. 476, 107 Fed. 597; Uinta Tunnel, etc., Co. v. Creede, etc., Co., 57 C. C. A. 200, 119 Fed. 164. As was said by Mr. Justice Field in Smelting Co. v. Kemp, 104 U. S. 636, 640, 26 L. Ed. 875:

"The execution and record of the patent are the final acts of the officers of the government for the transfer of its title, and, as they can be lawfully performed only after certain steps have been taken, that instrument, duly

signed, countersigned, and sealed, not merely operates to pass the title, but is in the nature of an official declaration by that branch of the government to which the alienation of the public lands, under the law, is intrusted, that all the requirements preliminary to its issue have been complied with. The presumptions thus attending it are not open to rebuttal in an action at law."

By the application of these established rules to the facts of this case, it is seen that the proceedings in the Land Department, which terminated with the issuance of the patent to the plaintiff, were within the jurisdiction of that department, and by them it is conclusively determined, so far as this action is concerned, that the plaintiff, by full compliance with the requirements of the homestead law, entitled himself to the patent; that he lawfully settled upon the land, and lawfully maintained his residence thereon for a continuous period of at least five years before the patent was issued, these being conditions precedent to obtaining a patent under the statutes (section 2291, Rev. St., Act May 14, 1880, c. 89, § 3, 21 Stat. 140, 141, U. S. Comp. St. 1901, pp. 1390, 1393) under which this patent was issued; that Judd never entitled himself to a patent; and that his entry was properly canceled, because wrongfully obtained. The defendants obtained no right to the land or to the timber by their purchase from Judd. His entry and his conveyance to the defendants have no bearing whatever upon this action, save as they indicate whether the defendants appropriated the timber under such an honest belief in a legal right so to do as affects or limits the damages which otherwise would be recoverable from them.

After the plaintiff, in the course of asserting a claim adverse to Judd, had secured the cancellation of the latter's entry and the rejection of the defendant's claim thereunder, it was entirely competent for the land officers to give full effect to plaintiff's residence upon the land during the existence of that entry, if such residence was actual, and was begun and maintained in good faith, with a view to obtaining title under the homestead law. Counsel for the defendants call attention to a statute of Wisconsin (section 4165, Rev. St. 1898) purporting to give certain probative force to a final receipt or patent certificate issued under the land laws of the United States, and argue from this that the plaintiff was a mere trespasser during the existence of Judd's entry, and that his residence upon the land during that time could not be made the basis of any right, legal or equitable. There are two sufficient answers to this contention. One is that, before the plaintiff's residence during that period was made the basis of issuing a patent to him, the receipt or certificate issued to Judd had been canceled by competent authority because it was wrongfully obtained, and by that cancellation had been deprived of all probative force. Guaranty Savings Bank v. Bladow; Thayer v. Spratt, supra. The other is that a state cannot by its legislation restrict or affect the authority of the officers of the Land Department in the disposition of the public lands of the United States, or withhold from the grantees of the United States any of the incidents of the transfer of the government's title. Bagnell v. Broderick, 13 Pet. 436, 450, 10 L. Ed. 235; Wilcox v. McConnel, 13 Pet. 498, 516, 10 L. Ed. 264; Irvine v. Marshall, 20 How. 558, 564, 15 L. Ed. 994; Gibson v. Chouteau, 13 Wall. 92, 99, 20 L. Ed. 534; Langdon v. Sherwood, 124 U. S. 74, 84, 8 Sup. Ct. 429, 31 L. Ed. 344; Paige v. Peters, 70 Wis. 182, 35 N. W. 329, 5 Am. St. Rep. 156.

From what has been said, it is clear that the defendants are liable to the plaintiff or to the United States for the conversion of the timber, and that their only lawful concern is that they be made to respond only to the rightful claimant. Their liability is as certain as if the cutting had been a willful trespass, and the measure of the damages for the conversion is the same, whether the right of recovery is in the plaintiff or in the United States. We therefore return to the question whether the plaintiff's title under the patent relates back to a time anterior to the cutting of the timber, and entitles him to recover for its conversion. It will be observed that the question is not whether the doctrine of relation can be invoked to create a liability where otherwise there is none, or to defeat or impair an intervening right or equity of an innocent third person, or can be invoked by one whose default and laches will make its application operate unjustly upon another (Evans v. Durango Land & Coal Co., 25 C. C. A. 531, 537, 80 Fed. 433, 438), or by a stranger to the title (Gibson v. Chouteau, 13 Wall. 92, 101, 20 L. Ed. 534), or can be invoked to avoid a liability otherwise existing (United States v. Ball [C. C.] 31 Fed. 667; United States v. Freyberg [C. C.] 32 Fed. 195; United States v. Norris [C. C.] 41 Fed. 424; Teller v. United States, 54 C. C. A. 349; 117 Fed. 577), or to make lawful an act which was criminal when done (Teller v. United States, 51 C. C. A. 230, 113 Fed. 273; Teller v. United States, 54 C. C. A. 349, 352, 117 Fed. 577, 580). Nor is the question whether a homestead claimant may, in advance of perfecting his claim into a full legal or equitable title, maintain an action against another for the value of timber severed from the land, which the homestead claimant could not have lawfully severed for purposes of sale. Shiver v. United States, 159 U. S. 491, 16 Sup. Ct. 54, 40 L. Ed. 231. These several matters, whether determined or undetermined by existing decisions, are apart from the matter now under consideration, save as the principles controlling it may be applicable to them. While the doctrine of relation is of equitable origin, it has a well-recognized application to proceedings at law. By it "is meant that principle by which an act done at one time is considered, by a fiction of law, to have been done at some antecedent period. It is usually applied where several proceedings are essential to complete a particular transaction, such as a conveyance or deed. The last proceeding which consummates the conveyance is held, for certain purposes, to take effect by relation as of the day when the first proceeding was had." Gibson v. Chouteau, 13 Wall. 92, 100, 20 L. Ed. 534. Its purpose is to promote justice and to give effect to the lawful intention of the parties. Its most frequent application is to conveyances of real property or interests therein in pursuance of an antecedent contract, when, to give effect to the intention of the parties, or to protect purchasers from the vendee pending the fulfillment of the contract, the title is considered as having vested in the grantee not merely from the date of the actual conveyance, but from the time when the contract was made. The doctrine is also applied to public land transactions, when, to give effect to the intent of the statute or to cut off intervening claimants, the patent is deemed to relate back to the initiatory act. Ross v. Barland, 1 Pet. 655, 664, 7 L. Ed. 302; Landes v. Brant, 10 How. 348, 372, 13 L. Ed. 449; Lessee of French v. Spencer, 21 How. 228, 240, 16

L. Ed. 97; Beard v. Federy, 3 Wall. 478, 491, 18 L. Ed. 88; Grisar v. McDowell, 6 Wall. 363, 380, 18 L. Ed. 863; Stark v. Starr, 6 Wall. 402, 418, 18 L. Ed. 925; Lynch v. Bernal, 9 Wall. 315, 325, 19 L. Ed. 714; Shepley v. Cowan, 91 U. S. 330, 337, 340, 23 L. Ed. 424; Weeks v. Bridgman, 159 U. S. 541, 546, 16 Sup. Ct. 72, 40 L. Ed. 253; United States v. Loughrey, 172 U. S. 206, 218, 219, 225–231, 19 Sup. Ct. 153, 43 L. Ed. 420.   Thus it was said in Shepley v. Cowan:

"The party who takes the initiatory step in such cases, if followed up to patent, is deemed to have acquired the better right, as against others, to the premises.   The patent which is afterwards issued relates back to the date of the initiatory act, and cuts off all intervening claimants.   Thus the patent upon a state selection takes effect as of the time when the selection is made and reported to the land office, and the patent upon a pre-emption settlement takes effect from the time of the settlement, as disclosed in the declaratory statement or proofs of the settler to the register of the local land office."

Other applications of the doctrine will be found in Cothrin v. Faber, 68 Cal. 39, 4 Pac. 940, 8 Pac. 599; Jackson v. Bull, 1 Johns. Cas. 81; Id., 2 Caines, Cas. 301; Jackson v. Ramsay, 3 Cow. 75, 15 Am. Dec. 242; Heath v. Ross, 12 Johns. 146; St. Onge v. Day, 11 Colo. 368, 18 Pac. 278; Musser v. McRae, 44 Minn. 343, 46 N. W. 673.   It conclusively appears, as before shown, that the timber was severed from the land after the initiation and during the maintenance of the plaintiff's homestead claim; in other words, while he had a conditional or inchoate right to the land, which was capable of perfection through compliance with the homestead law, and which in due course ripened into a full legal and equitable title before the commencement of this action.   This conditional or inchoate right included an exclusive right to the possession so long as the plaintiff should comply in good faith with the requirements of the law controlling homestead claims, and included a further right to earn and receive the title.   This right to the possession and to earn and receive the title extended to everything which was part of the land—timber as well as soil.   The severance of the timber from the soil was a violation or infraction of the plaintiff's right to the possession, and of his right to earn and receive the title. It was an injury to both.   It may be that the conditional or inchoate right of a homestead claimant is subject to a power in Congress to terminate it in whole or in part—as to the land or only as to the timber —at any time before it is perfected into a vested equitable estate by full compliance with the requirements of the law, but it is not terminable or subject to impairment by third persons.   Unquestionably, in the absence of the exercise of such a power by Congress—and its exercise here is not claimed—the plaintiff was entitled, upon perfecting his homestead claim, to receive a conveyance of the land in the condition in which it was when his claim was initiated.   The defendants made that impossible.   When the patent was issued, the timber was gone.   In its stead there existed a right of action for its conversion.   Does not the promotion of justice—the due protection of the plaintiff's rights—require that his patent be held to relate to the date of his initiatory act, and thereby to invest him with that which now takes the place of the timber?   We think it does.   The terms of the statute are such that the presence of valuable timber on public land does not exclude it from homestead settlement or entry.   It is therefore probable and reasonable

that the plaintiff, in selecting this tract from among others, was influenced by the value given to it by its timber. It was the intention of the government, by the homestead law, and was the intention of the plaintiff, in accepting the provisions of that law, that, upon his compliance with its requirements, he should be entitled to the land, with whatever advantages were incident to its natural condition and character, whether due to the fertility of its soil, or to its growth of timber. But for the act of the defendants, that intention would have been effectuated, and the timber would have passed to the plaintiff by the patent, as did the soil from which the timber was severed. It does not comport with the spirit of the homestead law to say that, after the initiation and partial perfection of a homestead claim, some third person may rob the land of a substantial part of that which gives it value, and that, on full compliance with the law by the homestead claimant, the government may convey to him that which is left of the land, and may recover from the wrongdoer, and retain to its own use, the value of that which has been unlawfully taken from the land through no fault or wrongful act of the homestead claimant. The law does not contemplate anything so unreasonable. The principles underlying and supporting the doctrine of relation are such that it may be as readily invoked to remedy or correct a loss such as is here disclosed, occurring while the claim was being perfected, as to prevent the loss of the entire right or title through an intervening claim. The plaintiff's title under the patent relates back to a time prior to the severance and conversion of the timber by the defendants, which was after the initiation of his claim, and entitles him to maintain this action.

The judgment is affirmed.